Marie DESNOYERS and Paul
Desnoyers p.p.a.

v.

The RHODE ISLAND
ELEVATOR COMPANY.

No. 88–359–Appeal.

Supreme Court of Rhode Island.

March 14, 1990.

Bernard Patrick Healy, Healy & Jones, Providence, for plaintiffs.

Richard Van Tienhoven, Providence, for defendant.

OPINION

FAY, Chief Justice.

This matter comes before the Supreme Court on an appeal by the plaintiffs, Marie Desnoyers and Paul Desnoyers p.p.a., from a Superior Court order granting the motion for summary judgment of the defendant, Rhode Island Elevator Company.

The facts relevant to this appeal are as follows. On September 9, 1981, Oliva J. Desnoyers (decedent), an employee of M. DeRobbio & Sons, Inc., was loading a freight elevator manufactured and installed by defendant when said elevator failed, his death resulting. On August 27, 1983, plaintiffs filed a complaint in Superior Court, alleging that defendant was liable

as the direct and proximate cause of decedent's death.

The plaintiffs advanced three theories of liability in their complaint. Count 1 alleged negligent maintenance, inspection, and repair of the elevator. Count 2 alleged breach of warranties (fair and merchantable quality and fitness for a particular purpose). Count 3 alleged defective design, manufacture, and installation of the elevator.

Relying primarily upon G.L.1956 (1985 Reenactment) § 9-1-29, defendant moved for summary judgment, asserting that plaintiffs' action was barred by the ten-year statute of limitations contained in the statute. The defendant argued that the elevator in question was covered by the statute of limitations because it was installed in 1966 and because it constituted an improvement to real property within the meaning of the statute. In further support of its motion defendant submitted the affidavit of Jules J. Rheaume. In the affidavit Rheaume stated that he and his wife, Muriel Rheaume, were the sole shareholders of J. & M. Rheaume, Inc., a company that purchased the assets, inventory, accounts receivable, and trade name of the Rhode Island Elevator Company in May 1972.[1] Rheaume stated that although J. & M. Rheaume, Inc., (operating as Rhode Island Elevator Company) had performed minor repairs on the elevator in 1977 and 1978 and had contracted to provide oil and grease for the elevator at two-month intervals, it had not been hired by M. DeRobbio & Sons, Inc., to inspect the elevator at any time. Relying upon this affidavit and § 9-1-29, defendant argued that there did not exist a genuine issue as to any material fact and that, therefore, a grant of summary judgment was appropriate.

By way of a memorandum submitted on the day of the hearing, plaintiffs opposed the motion on two bases. First, they argued that an elevator is not an improvement within the meaning of § 9-1-29 and that, therefore, the statute of limitations is inapplicable. Second, they argued that even if an elevator is considered to be an improvement to real property, § 9-1-29 should not be considered to be a bar to the action since, in addition to defective construction, plaintiffs were claiming liability for defendant's continuing failure to maintain, oil, and repair the elevator. In support of the latter argument, plaintiffs submitted supplemental answers to defendant's interrogatories pertaining to their negligent-maintenance claim. These answers were also submitted at the time of the hearing on the motion.

The trial justice took the matter under advisement and on July 22, 1988, granted defendant's motion on the basis that plaintiffs' action was barred by the ten-year limitation period found in § 9-1-29. We affirm in part and remand in part.

General Laws 1956 (1985 Reenactment) § 9-1-29 states:

"Constructors of improvements to real property—Immunity from liability.—No action (including arbitration proceedings) in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or supervised to any extent the construction of improvements to real property or against any contractor or subcontractor who constructed such improvements to real property or materialmen who furnished materials for the construction of such improvements on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements or in the materials furnished for such improvements:

(1) For injury to property, real or personal, arising out of any such deficiency;

(2) For injury to the person or for wrongful death arising out of any such deficiency; or

(3) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (1) and (2)

---

**1.** The plaintiffs contend that the Rhode Island Elevator Company and J. & M. Rheaume, Inc., which continued to do business as the Rhode Island Elevator Company, are one and the same entity. The defendant disputes this assertion but has agreed to treat the two companies as one entity for the purposes of this appeal. Therefore, we need not address this issue.

hereof; more than ten (10) years after substantial completion of such an improvement; Provided, however, That this shall not be construed to extend the time in which actions may otherwise be brought under §§ 9–1–13 and 9–1–14."

Before this court plaintiffs renew their contention that the elevator in question should not be considered to be an improvement to real property within the meaning of § 9–1–29 but rather to be a product within the meaning of § 9–1–13.[2] This argument raises an issue of first impression for this court. Other courts reviewing the issue have employed two basic approaches. One approach involves a common-law fixture analysis; the other rejects "the vagaries of fixture law" and adopts a "common-sense" interpretation of the term "improvement." *See Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn. 1977).

Courts that utilize the common-law fixture analysis in determining whether an item constitutes an improvement ask only whether the contested item satisfies the definition of a fixture. Black's Law Dictionary defines a fixture thus:

> "A chattel attached to realty * * *. Becoming accessory to it and part and parcel of it. * * * And ordinarily the property of the owner of the land." Black's Law Dictionary 766 (rev. 4th ed. 1968).

> "Ordinarily, requisites are actual annexation to realty, or something appurtenant thereto, appropriation to use or purpose of realty, and intention to make article permanent accession to freehold as gathered from nature of articles affixed, relation and situation of person making annexation, structure and mode of annexation, and purpose or use for which it has been made." *Id.* (citing

*Bankers Life Ins. Co. v. Ohrt*, 131 Neb. 858, 270 N.W. 497 (1936)).

Long ago this court held that a personal chattel becomes a fixture forming part of the real estate when it is so affixed to the freehold as to be incapable of severance without injury thereto. *Providence Gas Co. v. Thurber*, 2 R.I. 15 (1851). Depending upon the particular facts of each case, several courts have held that elevators are fixtures and, therefore, improvements under this analysis. *See* 35 Am.Jur. 2d *Fixtures* § 109 at 784 (1967).

■ We believe that the freight elevator at issue might well be considered a fixture under this analysis; however, we need not reach this issue because we are of the opinion that the term "fixture" and the phrase "improvement to real property" are not synonymous. Even though a fixture, by definition, is an improvement to real property, an improvement to real property need not be a fixture.

We believe that the more logical approach to the question before us would be to examine the common usage of the term "improvement" without reference to the law of fixtures. An improvement is

> "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Black's Law Dictionary 890 (rev. 4th ed. 1968).

■ Applying this definition to the facts of this case, we hold that the installation of the freight elevator by defendant constituted, as a matter of law, the construction of an improvement to real property within the meaning of § 9–1–29.[3] Accordingly plain-

---

**2.** General Laws 1956 (1985 Reenactment) § 9–1–13 provides in pertinent part:

"Limitation of actions generally—Product liability.—(a) Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."

**3.** Our confidence in the propriety of our decision is bolstered by the recognition that several

other jurisdictions with statutes of repose similar to § 9–1–29 have held that an elevator constitutes an improvement to real property within the meaning of their respective statutes. *See Hall v. Luby Corp.*, 232 N.J. Super. 337, 556 A.2d 1317 (1989); *Jones v. Ohio Building Co.*, 4 Ohio Misc.2d 10, 447 N.E.2d 776 (1982); *Mitchell v. United Elevator Co.*, 290 Pa.Super. 476, 434 A.2d 1243 (1981).

tiffs' claims of breach of warranty and of defective design, manufacture, and installation were time barred by § 9–1–29, and the trial justice was correct in applying the statute to dismiss these claims.[4]

The question remains, however, whether there existed a genuine issue of material fact concerning plaintiffs' allegation of negligent maintenance, inspection, and repair of the elevator such as to render summary judgment inappropriate. As a rule, in passing upon a motion for summary judgment, it is the province of the trial justice to determine, by an examination of the pleadings, depositions, answers to interrogatories, admissions on file, and the affidavits of the parties, whether these documents present a genuine issue of material fact. *Ludwig v. Kowal*, 419 A.2d 297 (R.I. 1980).

The plaintiffs' complaint contained the allegation of negligent maintenance, inspection, and repair of the elevator. Furthermore, the allegation was supported, to some extent, by plaintiffs' initial answers to defendant's interrogatories, wherein plaintiffs stated that defendant had agreed to inspect the elevator system periodically and that defendant had negligently performed these inspections. In opposing defendant's motion for summary judgment, however, plaintiffs made no reference to these answers; rather they relied solely upon their supplemental answers, which were not submitted until the very day of the hearing.

This court has long been cognizant of the fact that a Superior Court justice presiding at a motion calendar is required to pass upon scores of controversies each day and that he or she is often presented with a file containing a multiplicity of documents and discovery materials. For this reason we have held:

"It is wholly unrealistic to expect the motion justice sua sponte to conduct an independent examination of all discovery materials, pleadings, and case documents in order to determine whether a genuine issue of material fact exists. It is clearly the obligation of the party opposing the motion to direct the motion justice's attention to the specific portions of the discovery materials upon which such party relies and to supplement those materials, where needed, by an affidavit executed by an affiant who would be competent to testify to the matters stated therein." *Nedder v. Rhode Island Hospital Trust National Bank*, 459 A.2d 960, 962 (R.I.1983).

Therefore, it was plaintiffs' duty to alert the trial justice to that portion of plaintiffs' initial answers that supported their negligent maintenance, inspection, and repair claim. Because plaintiffs did not do so, these answers were not properly before the trial justice, and the trial justice was not obligated to consider them in ruling on the motion.

Notwithstanding this fact plaintiffs argue that their supplemental answers alone raised a genuine issue of material fact sufficient to preclude a grant of summary judgment. These supplemental answers indicated that plaintiffs had engaged an expert who believed that the elevator at issue had been negligently inspected and oiled.[5] The plaintiffs maintain that these answers lent support to their negligent maintenance, inspection, and repair claim and that, therefore, the grant of summary judgment was in error.

Unfortunately it is not possible to determine from the record whether the trial justice considered these supplemental answers in ruling on the motion for summary judgment. This court has previously held that it is within a trial justice's discretion to refuse to consider a plaintiff's affidavit and memorandum that are submitted on the very day of the hearing. *Nichola v. John*

---

4. It was undisputed that the elevator was installed more than ten years prior to the accident.

5. According to the answers, it was the expert's opinion that defendant's negligent failure to inspect the counterweights on the door, as well as its negligent failure to oil the door, caused the elevator to drop some distance when the hydraulic muffler failed. The doorway dropped at the same time. This should not have happened had the elevator been sufficiently maintained and oiled.

*Hancock Mutual Life Insurance Co.,* 471 A.2d 945 (R.I.1984). Thus it may well be that the trial justice simply refused to consider plaintiffs' supplemental answers because their submission was untimely. Given the fact that over four years had elapsed between the submission of plaintiffs' initial answers and the submission of plaintiffs' supplemental answers, we do not believe that such a refusal would constitute an abuse of discretion. If the trial justice did not consider the supplemental answers, the grant of summary judgment was proper.

On the other hand, the record shows that the hearing on the motion was held in February 1988 and that judgment was not entered until July 1988, some five months later. This span of time between hearing and judgment suggests that the trial justice may have considered plaintiffs' supplemental answers in ruling on the motion. If the trial justice did consider the supplemental answers, it would appear that the grant of summary judgment was erroneous.

These conflicting results prevent us from rendering our opinion on this issue until we know whether the trial justice considered these answers in ruling on the motion. It is therefore necessary for us to remand this case to the Superior Court for hearing by the motion justice with respect to the matters adverted to in this opinion.

For the foregoing reasons, the papers of this case are remanded to the Superior Court with our decision endorsed thereon.