DECISION
The Defendant, Heatbath Corporation (Heatbath) moves for summary judgment pursuant to Super. R. Civ. P. 56. The Plaintiffs, Joseph LaPointe (Mr. LaPointe), and his wife, Yvette LaPointe (collectively, the Plaintiffs), object to the motion.
 I Facts and Travel
The Plaintiffs filed a complaint in this Court on May 3, 2006, alleging, inter alia, that Mr. LaPointe suffered numerous asbestos-related injuries as a result of his occupational exposure to asbestos and asbestos-containing materials during his forty-year career as a boiler and furnace repairman. He alleges that those exposures caused him to develop malignant mesothelioma, which was diagnosed in 2005. Mrs. LaPointe alleges loss of consortium stemming from Mr. LaPointe's injuries.
One of Mr. LaPointe's duties was to install and service single-tube luminous flamer burners manufactured by Heatbath. The Plaintiffs allege that Heatbath had a duty to warn of the reasonably foreseeable dangers related to the installation, use, and maintenance of said burners (as well as the dangers posed by asbestos-containing materials used in conjunction with the *Page 2 
burners) and that it failed to do so. They assert that this failure contributed to Mr. LaPointe's personal injuries.
In its Motion for Summary Judgment, Heatbath maintains that the Plaintiffs have not offered any evidence that Mr. LaPointe was exposed to any asbestos-containing products that were manufactured by Heatbath. It further asserts that its burners did not contain asbestos, and that it should not be held responsible for any alleged injuries caused by products manufactured by other companies. Heatbath finally contends that the Plaintiffs' claim is barred by G.L. 1956 § 9-1-29, a Statute of Repose, because the burners constituted improvements to real estate within the meaning of the statute.
The Plaintiffs assert that there exist genuine issues of material fact as to whether or not Heatbath's products contained asbestos. Furthermore, although they agree that in general, a manufacturer does not have a duty to warn of reasonably foreseeable dangers posed by another manufacturer's products, they assert that the duty to warn extends to dangers posed by asbestos-containing products that necessarily were combined with the burners. They also contend that Heatbath had a duty to warn of the dangers involved in replacing component parts during maintenance or service because Heatbath was aware that maintaining and servicing the burners usually resulted in exposure to asbestos-containing products.
With respect to the Statute of Repose, the Plaintiffs assert that the Act is inapplicable because even if the installation of a burner constituted an improvement to real estate, constant annual maintenance is not an improvement. Furthermore, the Plaintiffs contend that even if applicable, the Statute of Repose, a general statute, would be trumped by the Statute of Limitations, a specific statute that does not begin to run until a potential plaintiff receives a certified doctor's letter diagnosing an asbestos-related disease. *Page 3 
 II Standard of Review
It is axiomatic that "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact."Palmisciano v. Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992). During a summary judgment proceeding, "the [C]ourt does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. at 320.
Moreover, the Court "must look for factual issues, not determine them. The [court's] only function is to determine whether there are any issues involving material facts." Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981). The Court's purpose during the summary judgment procedure is always "issue finding, not issue determination." Gliottone v.Ethier, 870 A.2d 1022, 1028 (R.I. 2005). However, "when a party has given answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony [has] changed." Weaver v. American Power ConversionCorp., 863 A.2d 193, 200 (R.I. 2004) (quoting Hernandez-Loring v.Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).
 III Analysis
Heatbath asserts that not only have the Plaintiffs failed to produce any evidence that its burners contained asbestos, but that Mr. LaPointe admitted in deposition testimony that he did not possess such evidence. In response, counsel for the Plaintiffs submitted a sworn affidavit in *Page 4 
which Mr. LaPointe stated that he routinely serviced Heatbath burners, their pilot lights, gas valves, and gaskets. He further stated that he believed that the gaskets contained asbestos.
Heatbath objected to the affidavit, contending that it was self-serving and contradicted Mr. LaPointe's deposition testimony. At a hearing on the Motion for Summary Judgment, counsel for the Plaintiffs represented that because Mr. LaPointe's deposition testimony was unfinished, the affidavit was necessary to defend the motion. He further argued that an unfinished deposition should not be considered inconsistent with the affidavit, because Mr. LaPointe had not yet been given an opportunity to testify on matters contained in the affidavit. However, although Heatbath contends that Mr. LaPointe's affidavit contradicts his deposition testimony, a close reading of the evidence reveals no such contradiction because Mr. LaPointe's deposition testimony only addressed the issue of installation, while his affidavit also included statements concerning repair and service. Consequently, the Court will consider the affidavit in reaching its Decision.
Summary Judgment
The first issue to be addressed is whether there exist genuine issues of material fact concerning the existence of asbestos in Heatbath's burners, and if so, whether it had a duty to warn of the dangers posed by asbestos fibers released during installation, maintenance and service of those burners.
At the deposition, the following colloquy occurred:
 "Q. Okay. Now sir, was it your understanding that when these Heatbath burners would arrive in a box for installation that were any parts at all contained within those burners that contained asbestos?
 A. Not that I know of.
 Q. I think you testified earlier that you would install them using some kind of . . . *Page 5 
 A. Yes, we would have to make a hot plate. The hot plate was to prevent cold air from coming into cool off your heat, so what you would do after you put that hot plate which was a piece of sheet metal, that's all that was. We'd do the whole ring and if you know how the internal portion, once we remove the coal racks that were in there, we had an area that we would lay that hot plate around the whole circumference of the boiler and lay it on top of the ring of the burner so that prevented cold air from wiping up through.
 On top of that now we use Colco Insulag and we'd put a half inch to three-quarters of an inch thick of insulation on top of that.
 Q. Okay. Is it your understanding that you were exposed to asbestos during the process of installing these Heatbath?
 A. Yes.
 Q. And that would have been from using the Insulag?
 A. Yes.
 Q. Was there anything in the Heatbath burner itself aside from the use of this Insulag that you believed exposed you to asbestos?
 A. No.
 Q. And again, pardon me if I've asked you this before, but other than this particular type of conversion kit or burner that you used in conjunction with converting coal to gas, were there any other Heatbath products that you worked with that you're aware of?
 A. No." LaPointe Dep., Vol VIII, at 121-122.
Heatbath relies upon this exchange, coupled with an affidavit and exhibits from its president, Ernest Walen, III, to support its assertion that asbestos was not used in the manufacture of its burners.
In Mr. LaPointe's affidavit, he stated that routine maintenance and/or repair calls often required removal of the pilot light, thereby causing direct contact with asbestos. He further stated that in order to install a conversion burner, he had to clean the existing boiler, remove the flu pipe, coal grates and ash pit door. Mr. LaPointe then stated that "it was impossible to install, remove, repair, and maintain Heatbath conversion burners without being exposed to asbestos." He additionally stated that he believed that the gasket contained in the gas valve contained *Page 6 
asbestos, and that he had to utilize asbestos materials in order to repair, replace, and/or install Heatbath burners.
In his deposition, Mr. LaPointe denied actual knowledge as to whether the burners contained asbestos; his affidavit, however, stated that he believed that the gaskets within the gas valves contained asbestos. He also testified during his deposition that he was exposed to asbestos during installation of the burners, but he did not allege that the exposure resulted from the actual burners themselves. If, as alleged, the gaskets contained asbestos, then any exposure to Heatbath burners would have occurred during the repair and/or servicing of the burners, rather than during installation.
Based upon the foregoing, the Court finds that there exist genuine issues of material fact as to whether the Heatbath conversion burners contained asbestos. Whether Heatbath burners ever contained any quantity of asbestos or whether Heatbath ever directed persons in the installation of asbestos materials in its burners are issues for a jury to determine. Likewise, it also is for a jury to determine whether Heatbath burners were substantial factors in causing Mr. LaPointe's illness. See Gliottone v. Ethier, 870 A.2d 1022, 1027 (R.I. 2005) ("To survive a summary judgment motion, the opposing party must only present evidence from which a jury could draw reasonable inferences sufficient to create a genuine issue of material fact.")
Although there may be various possible causes of Mr. LaPointe's alleged injuries, a proximate cause need not be the sole and only cause if it concurs and unites with some other cause which, acting at the same time, produces the injury. See Hueston v. Narragansett Tennis Club,Inc., 502 A.2d. 827 (R.I. 1986). Accordingly, genuine issues of material fact also exist as to whether it was reasonably foreseeable that installation and maintenance of Heatbath burners *Page 7 
would have caused exposure to asbestos such that Heatbath would have had a duty to warn. Accordingly, Heatbath's Motion for Summary Judgment is denied.
The Statute of Repose
The next issue to be addressed is whether the Statute of Repose bars the Plaintiffs' claim against Heatbath. The Plaintiffs maintain that the statute is inapplicable, and that even if it did apply, the Statute of Limitations is a specific statute that takes precedence over the general provisions of the Statute of Repose. To resolve this issue, the Court must interpret the statute to determine whether the installation, repair and maintenance of the burners constituted "improvements" for purposes of the statute.
The ultimate goal of statutory interpretation "is to give effect to the General Assembly's intent." State v. Andujar, 899 A.2d 1209, 1215
(R.I. 2006). The plain language employed in a statute constitutes the best evidence of the General Assembly's intent. See id. Accordingly, where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. ofEmployees' Retirement System of State v. DiPrete, 845 A.2d 270, 297
(R.I. 2004) (internal quotations omitted). This means that when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written."Id.
Conversely, where the language of a statute is unclear or ambiguous, the Court "examine[s] the entire statute to ascertain the intent and purpose of the Legislature." Trant v. Lucent Technologies, 896 A.2d 710,712 (R.I. 2006). In conducting such an examination, the Court is required to "determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Id. *Page 8 
The Statute of Repose that is at issue in this case is § 9-1-29. In contrast to "a statute of limitations, which `bars a right of action unless the action is filed within a specified period after an injury occurs [,] . . . a "statute of repose" terminates any right of action after a specific time has elapsed. . . .'" Theta Properties v. RonciRealty Co., Inc., 814 A.2d 907, 913 (R.I. 2003) (quoting Salazar v.Machine Works, Inc., 665 A.2d 567, 568 (R.I. 1995)). Section 9-1-29
provides:
 "No action . . . in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or supervised to any extent the construction of improvements to real property, or against any contractor or subcontractor who constructed the improvements to real property, or material suppliers who furnished materials for the construction of the improvements, on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements or in the materials furnished for the improvements: (1) For injury to property, real or personal, arising out of any such deficiency; (2) For injury to the person or for wrongful death arising out of any such deficiency; or (3) For contribution or indemnity for damages sustained on account of any injury mentioned in subdivisions (1) and (2) hereof more than ten (10) years after substantial completion of such an improvement. . . ." Section 9-1-29.
The purpose of the statute is to "immunize construction contractors — as well as others who construct, furnish materials for, or provide professional services in connection with improvements to real property — against tort claims that have not been brought within ten years of the improvement's substantial completion." Nichols v. R.R. Beaufort Associates, Inc., 727 A.2d 174, 176 (R.I. 1999).
The Rhode Island Supreme Court has had occasion to interpret the meaning of the word "improvements" contained in the Statute of Repose.See Boghossian v. Ferland Corp., 600 A.2d 288, 289 (R.I. 1991) (Section "9-1-29 applies to an action for damages for breach of a contract to improve real property); Desnoyers v. Rhode Island Elevator Co.,571 A.2d 568, 570 (R.I. 1990) *Page 9 
(holding that the installation of a freight elevator "constituted, as a matter of law, the construction of an improvement to real property within the meaning of § 9-1-29"); Qualitex, Inc. v. Coventry RealtyCorp., 557 A.2d 850, 852 (R.I. 1989) (holding that a fire-sprinkler system is an "improvement to real property" for purposes of the statute); Allbee v. Crane Co., 644 A.2d 308, 308 (R.I. 1994) (Mem.) (installation of a turbine pump constituted an improvement). Furthermore, in Qualitex, Inc., the Supreme Court acknowledged that other jurisdictions "have consistently found heating, refrigeration, and electrical systems to be improvements to real property."557 A.2d at 852.
In light of the foregoing, the Court holds that installation of the burners constituted improvements to real property under the Statute of Repose; however, the Court further holds that service, repair, and maintenance of the burners do not constitute improvements within the meaning of the statute. In his affidavit, Mr. LaPointe stated that he routinely serviced, maintained and repaired Heatbath burners over the course of his career. Accordingly, the Plaintiffs' claim is not barred by the Statute of Repose. Instead, their claim is governed by the Statute of Limitations. See Benner v. J.H. Lynch Sons, Inc.,641 A.2d 332, 336 (R.I. 1994) (holding that "the right of action accrues upon the discovery of the harmful effects of the substance and its toxic quality").
 Conclusion
The Court holds that the Plaintiffs' claim is not barred by the Statute of Repose. The Court further holds that there are triable issues of fact concerning whether Heatbath's burners contained asbestos and whether it had a duty to warn. Accordingly, Heatbath's Motion for Summary Judgment is denied.
 Counsel shall prepare appropriate order for entry. *Page 1 
Before the Court is a Motion for Summary Judgment pursuant to Super. R. Civ. P. 56 filed by defendant Laars Heating Systems Co., as Parent to Teledyne Laars (Laars). The Plaintiffs, Joseph LaPointe (Mr. LaPointe), and his wife, Yvette LaPointe (collectively, "Plaintiffs"), object to the motion.
 Facts/Travel
On May 3, 2006, Plaintiffs filed a complaint in Providence County Superior Court against various defendants alleging, inter alia, that Mr. LaPointe suffered asbestos-related injuries as a result of his occupational exposure to asbestos and asbestos-containing materials during his forty-year career as a boiler and furnace repairman. He alleges that those exposures caused him to develop malignant mesothelioma, which was diagnosed in 2005. Mrs. LaPointe alleges loss of consortium stemming from Mr. LaPointe's injuries.
The Plaintiffs assert that some of the asbestos-containing products that caused Mr. LaPointe's injuries were manufactured, distributed, or sold by Laars. However, Laars contends that Plaintiffs have no reasonable expectation of identifying at trial any asbestos-containing products that it sold, manufactured or distributed. To support this contention, Laars has *Page 2 
submitted the affidavit of James Teague, a Laars employee of thirty-two consecutive years. Mr. Teague stated that none of the component parts and gaskets of boilers manufactured under the Laars brand ever has contained asbestos.
 Standard of Review
It is axiomatic that "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact."Palmisciano v. Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992). During a summary judgment proceeding, "the [C]ourt does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. at 320.
Moreover, the Court "must look for factual issues, not determine them. The [court's] only function is to determine whether there are any issues involving material facts." Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981). The Court's purpose during the summary judgment procedure is always "issue finding, not issue determination." Gliottone v.Ethier, 870 A.2d 1022, 1028 (R.I. 2005).
 Analysis
Laars maintains that its motion for summary judgment should be granted because Mr. LaPointe has been unable to identify his contact with any asbestos-containing products that were sold, manufactured, or distributed by Laars. The Plaintiffs object, contending that the motion is "premature." They assert that Laars has failed to fully comply with the Court-Approved Master Interrogatories and Requests for Production, and that until such time as Laars is in full compliance, there exist genuine issues of material fact concerning the existence of asbestos in *Page 3 
Laars products. The Plaintiffs also question the propriety of Mr. Teague's affidavit, contending that it is self-serving and not subject to cross-examination. Accordingly, they have filed a motion to compel Laars to fully respond to the Court-Approved Master Interrogatories and Requests for Production.
Super. R. Civ. P. 26 (b) establishes the scope of discovery in a civil action. It provides:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Super. R. Civ. P. 26(b)(1).
"Rule 37(d) of the Superior Court Rules of Civil Procedure affords a trial justice wide discretion to enforce its discovery orders. . . ."The Travelers Ins. Co. v. Builders Resource Corp., 785 A.2d 568, 569
(R.I. 2001); see also State v. LaChapelle 638 A.2d 525, 531 (R.I. 1994) ("The duty to make an honest and candid response to discovery requests should not be diluted by semantic gymnastics.").
Relying upon the Court-Approved Master Interrogatories, Plaintiffs asked Laars questions such as whether it ever had manufactured or distributed any products containing asbestos fibers, and if so, the trade or brand name of such products, their chemical composition, and whether they were accompanied by any kind of written health warnings. In response, Mr. Teague stated in his affidavit that he had been employed by Laars since 1974, and that "no component of any Laars boiler (domestic or pool) has ever contained asbestos." Affidavit of Mr.Teague at 1. He further stated that Laars boilers never contained asbestos-containing gaskets, *Page 4 
because "[t]he use of an asbestos or any other kind of fiber gasket would have been inappropriate in light of the intended function of the gaskets, i.e., to prevent water leakage." Id. at 2. However, Mr. Teague did not provide any documentation in support of these unsubstantiated corporate statements.
Furthermore, although Mr. Teague stated that his statements concerned matters within his personal knowledge, a genuine issue of material fact exists as to whether Laars used asbestos in its products before Mr. Teague entered his employment with the corporation. Furthermore, similar products from other corporations apparently contained asbestos, thus raising another genuine issue of material fact with respect to whether Laars products also contained asbestos. However, Plaintiffs have no way of finding out such information until Laars gives responsive answers to the Court-Approved Master Interrogatories and Requests for Production.See Super. R. Civ. P. 26 (b)(1).
 Conclusion
In view of the foregoing, the Court concludes that the Motion for Summary Judgment is "premature" and should be denied. The Court orders Laars to provide more responsive answers to the Court-Approved Master Interrogatories and Requests for Production, and it grants Plaintiffs more time for purposes of reviewing said answers.
 Counsel shall submit an appropriate order for entry. *Page 1 
Before the Court is defendant Parker Boiler Corporation's (Parker) Motion for Summary Judgment pursuant to Super. R. Civ. P. 56. The Plaintiffs, Joseph LaPointe (Mr. LaPointe), and his wife, Yvette LaPointe (collectively, "Plaintiffs"), object to the motion.
 Facts/Travel
On May 3, 2006, Plaintiffs filed a complaint in Providence County Superior Court against various defendants alleging, inter alia, that Mr. LaPointe suffered asbestos-related injuries as a result of his occupational exposure to asbestos and asbestos-containing materials during his career as a boiler and furnace repairman. He alleges that those exposures caused him to develop malignant mesothelioma, which was diagnosed in 2005. Mrs. LaPointe alleges loss of consortium stemming from Mr. LaPointe's injuries.
The Plaintiffs assert that some of the asbestos-containing products that caused Mr. LaPointe's injuries were manufactured, distributed, or sold by Parker. Parker contends that Plaintiffs have no reasonable expectation of identifying at trial any asbestos-containing products that it sold, manufactured or distributed. The Plaintiffs object, contending that the motion is *Page 2 
premature; instead, they move the Court to compel Parker to fully respond to the Court-Approved Master Interrogatories and Requests for Production.
Mr. LaPointe worked for forty years as a boiler and furnace repairman. During that period, he serviced both commercial and residential boilers and furnaces, some of which allegedly contained asbestos. Although he recalls many of the locations at which he worked, given the length of his career and the thousands of boilers and furnaces upon which he worked, he is unable to recall all of them. During the course of discovery, Mr. LaPointe obtained the Massachusetts Commercial Boiler Registry (Registry), which details existing boilers located at commercial premises. The Registry does not, however, list the locations of residential boilers. Mr. LaPointe specifically remembers servicing two of the listed commercial premises where Parker boilers were present. Currently, the Parker boilers at these locations do not contain asbestos.
 Standard of Review
It is axiomatic that "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact."Palmisciano v. Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992). During a summary judgment proceeding, "the [C]ourt does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. at 320.
Moreover, the Court "must look for factual issues, not determine them. The [court's] only function is to determine whether there are any issues involving material facts." Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981). The Court's purpose during the summary judgment *Page 3 
procedure is always "issue finding, not issue determination."Gliottone v. Ethier, 870 A.2d 1022, 1028 (R.I. 2005).
 Analysis
Parker maintains that its motion for summary judgment should be granted because Mr. LaPointe has been unable to identify his contact with any asbestos-containing products that were sold, manufactured or distributed by Parker. The Plaintiffs respond by asserting that they have been unable to discover any such information due to Parker's failure to fully respond to the Court-Approved Master Interrogatories and Requests for Production.
Super. R. Civ. P. 26 (b) establishes the scope of discovery in a civil action. It provides:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Super. R. Civ. P. 26(b)(1).
"Rule 37(d) of the Superior Court Rules of Civil Procedure affords a trial justice wide discretion to enforce its discovery orders. . . ."The Travelers Ins. Co. v. Builders Resource Corp., 785 A.2d 568, 569
(R.I. 2001); see also State v. LaChapelle, 638 A.2d 525, 531 (R.I. 1994) ("The duty to make an honest and candid response to discovery requests should not be diluted by semantic gymnastics.").
Relying upon the Court-Approved Master Interrogatories, Plaintiffs asked Parker questions such as whether it had manufactured or distributed any products containing asbestos fibers from 1930 to the present, and if so, the trade or brand name of such products, their *Page 4 
chemical composition, and whether they were accompanied by any kind of written health warnings. In its answers, Parker repeatedly responded in the following manner:
 "The defendant objects to this Interrogatory on the grounds that it is unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence in view of the facts adduced during discovery, including in particular the plaintiff's deposition testimony concerning his work with boilers from a variety of manufacturers. In this regard, the plaintiff has testified that he reviewed the Massachusetts Boiler Registry in order to isolate specific locations where he may have serviced boilers throughout his career. The plaintiff recognized two locations, 1068 Slade Street and 994 Jefferson Street, Fall River, Massachusetts as locations where he may have serviced boilers at some point in his career, though he could not provide any information about when he was at these locations. The Massachusetts Boiler Registry indicates that a Parker Boiler Co. boiler is located at these addresses. The plaintiff was unable to confirm whether a Parker Boiler Co. boiler was present when he was at these locations, and has no memory of ever working on or around a Parker Boiler Co. boiler. Moreover, the Parker Boiler Co. boilers that are present at these locations were manufactured in 1986 and 1991 respectively, and neither contain asbestos."
The Plaintiffs objected on grounds that such answers are limited and unresponsive. The Court agrees, and it grants Plaintiffs time for more discovery.
Mr. LaPointe's career spanned forty years and involved service calls to both commercial and residential properties. The Registry only lists boilers that currently exist and that are located in commercial properties. It does not list boilers in residential properties, nor does it list boilers in commercial properties that previously have been removed or replaced. It is conceivable that Mr. LaPointe serviced Parker-manufactured boilers that have since been removed from the listed commercial properties, or that he serviced Parker boilers in residential properties. However, Plaintiffs have no way of finding out such information until Parker gives responsive answers to the Court-Approved Master Interrogatories and Requests for Production. See The TravelersIns. Co. v. Builders Resource Corp., 785 A.2d 568, 569 (R.I. 2001). *Page 5 
 Conclusion
In view of the foregoing, the Court concludes that the Motion for Summary Judgment is "premature" and should be denied. The Court orders Parker to provide more responsive answers to the Court-Approved Master Interrogatories and Requests for Production within fourteen days from the filing date of this Decision.
Counsel shall submit an appropriate order for entry.