In this asbestos-related personal injury and wrongful death action, one of the multiple corporate defendants, Kaiser Gypsum Company, Inc. (Kaiser), has moved for summary judgment pursuant to Super. R. Civ. P. 56. Plaintiff Elaine T. Plympton in her Capacity as Administratrix of the Estate of Wayne Plympton (Mr. Plympton), and Individually as his Surviving Spouse objects to the motion.[1] Jurisdiction is pursuant to Super. R. Civ. P. 56 and G.L. 1956 § 8-2-14.[2]
 I Facts and Travel
The Plaintiff and decedent, Wayne Plympton, worked as a general contractor during the late 1960s and early 1970s. PlymptonDeposition dated May 20, 2005, at 53. During that period, he allegedly was exposed to various asbestos containing products and later was diagnosed with mesothelioma. Id. at 111. Most of the work that Mr. Plympton performed *Page 2 
during that period involved the installation of drywall both for new construction projects as well as for "minor renovations." PlymptonDeposition dated May 19, 2005, at 91. In doing so, Mr. Plympton often used premixed five gallon buckets of joint compound manufactured by Kaiser. Id. at 89. Mr. Plympton obtained the joint compound through deliveries to his workplace, as well as through personal purchases from lumberyards. Plympton Deposition dated May 20, 2005, at 69-71. Mr. Plympton died on November 1, 2005. .
 II Standard of Review
The granting of a Motion for Summary Judgment will be affirmed "if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Avila v. Newport Grand Jai Alai LLC, 935 A.2d 82, 95 (R.I. 2007) (citing Woodland Manor III Associates v. Keeney, 713 A.2d 806, 810 (R.I. 1998)). During a summary judgment proceeding, "the [C]ourt does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville RacingAssociation, 603 A.2d 317, 320 (R.I. 1992).
Accordingly, the Court "must look for factual issues, not determine them. The [court's] only function is to determine whether there are any issues involving material facts." Steinberg v. State, 427 A.2d 338, 340
(R.I. 1981). The opposing party "carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." Avila, 935 A.2d at 95 (quotingTaylor v. Mass. Flora Realty, Inc., 840 A.2d 1126, 1129 (R.I. 2004)). *Page 3 
 III Analysis
Kaiser contends that G.L. 1956 § 9-1-29, a Statue of Repose, provides it immunity from suit because the Plaintiffs failed to bring their action within ten years after the substantial completion of improvements to real property. The Plaintiff contends that the Statue of Repose is inapplicable in this case. At a hearing on the motion, the parties argued the applicability of the Statute of Repose.
 A The Statute of Repose
Kaiser asserts that § 9-1-29 provides it with immunity from suit because Plaintiffs failed to file their action within the mandatory ten years after the substantial completion of improvements to real property. In response, the Plaintiff maintains that the Legislature did not intend to protect manufacturers who incorporate dangerous materials into their products. She further asserts that for purposes of the Statute of Repose, Kaiser did not "furnish" materials for use in construction or improvements.
The ultimate goal of statutory interpretation "is to give effect to the General Assembly's intent." State v. Andujar, 899 A.2d 1209, 1215
(R.I. 2006). The plain language employed in a statute constitutes the best evidence of the General Assembly's intent. See id. Accordingly, where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. ofEmployees' Retirement System of State v. DiPrete, 845 A.2d 270, 297
(R.I. 2004) (internal quotations omitted). This means that when "a statutory provision is *Page 4 
unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id.
Conversely, where the language of a statute is unclear or ambiguous, the Court "examine[s] the entire statute to ascertain the intent and purpose of the Legislature." Trant v. Lucent Technologies, 896 A.2d 710,712 (R.I. 2006). In conducting such an examination, the Court is required to "determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Id. Finally, the Court "cannot interpret a statue in a way that will lead to an absurd result." Pastore v. Samson,900 A.2d 1067, 1083 (R.I. 2006).
The Statute of Repose at issue in this case is § 9-1-29. The purpose of this statute is to "require that individuals seeking recovery in tort against constructors of improvements to real property must bring an action within ten years of the substantial completion of the improvement." Qualitex, Inc. v. Coventry Realty Corp., 557 A.2d 850, 852
(R.I. 1989). The Legislature enacted this statute after "the extinction of the doctrine of privity[,]" in an attempt "to shield `architects, professional engineers, contractors, subcontractors, and materialmen' and to provide them with a reasonable limitation on their greatly expanded potential liability." Id. At 852-53 (quoting Walsh v.Gowing, 494 A.2d 543, 546 (R.I. 1985)). In contrast to "a statute of limitations, which `bars a right of action unless the action is filed within a specified period after an injury occurs [,] . . . a `statute of repose terminates any right of action after a specific time has elapsed. . . .'" Theta Properties v. Ronci Realty Co., Inc.,814 A.2d 907, 913 (R.I. 2003) (quoting Salazar v. Machine Works, Inc.,665 A.2d 567, 568 (R.I. 1995)).
Section 9-1-29 provides:
 "No action . . . in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or *Page 5 
supervised to any extent the construction of improvements to real property, or against any contractor or subcontractor who constructed the improvements to real property, or material suppliers who furnished materials for the construction of the improvements, on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements or in the materials furnished for the improvements: (1) For injury to property, real or personal, arising out of any such deficiency; (2) For injury to the person or for wrongful death arising out of any such deficiency; or (3) For contribution or indemnity for damages sustained on account of any injury mentioned in subdivisions (1) and (2) hereof more than ten (10) years after substantial completion of such an improvement. . . ." Section 9-1-29.
Thus, the purpose of the statute is to "immunize construction contractors — as well as others who construct, furnish materials for, or provide professional services in connection with improvements to real property — against tort claims that have not been brought within ten years of the improvement's substantial completion." Nichols v. R.R.Beaufort Associates, Inc., 727 A.2d 174, 176 (R.I. 1999).
The Rhode Island Supreme Court has had occasion to interpret the meaning of the word "improvements" as contemplated by the Statute of Repose. It defines an improvement as
 "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Desnoyers v. Rhode Island Elevator Co., 571 A.2d 568, 570 (R.I. 1990) (quoting Black's Law Dictionary 890 (rev. 4th ed.1968)).
See also Boghossian v. Ferland Corp., 600 A.2d 288, 289 (R.I. 1991) (stating that § "9-1-29 applies to an action for damages for breach of a contract to improve real property); Desnoyers v. Rhode Island ElevatorCo., 571 A.2d 568, 570 (R.I. 1990) (holding that the installation of a freight elevator "constituted, as a matter of law, the construction of an improvement to real property within the meaning of § 9-1-29");Qualitex, Inc. v. Coventry Realty Corp., *Page 6 557 A.2d 850, 852 (R.I. 1989) (holding that a fire-sprinkler system is an "improvement to real property" for purposes of the statute); Allbee v.Crane Co., 644 A.2d 308, 308 (R.I. 1994) (Mem.) (installation of a turbine pump constituted an improvement).
In Qualitex, Inc., the Supreme Court acknowledged that other jurisdictions "have consistently found heating, refrigeration, and electrical systems to be improvements to real property."557 A.2d at 852. In that case, the Court discussed whether defendant ITT Grinnell was a manufacturer within the class of persons protected by § 9-1-29. In that case, the plaintiff alleged that "Grinnell Corporation, a predecessor in interest to ITT Grinnell, designed, manufactured, sold and installed the [allegedly defective] sprinkler unit."Qualitex, 557 A.2d at 851. In discussing the term "manufacturer," the Supreme Court observed that § 9-1-29
 "does not expressly exclude manufacturers or any particular class from its operation. The language of the statute was broadly written, and it is clear that the Legislature intended a broad application. Although terms must be given their plain and ordinary meaning, [i]f a mechanical application of a statutory definition . . . defeats legislative intent, this court will look beyond mere semantics and give effect to the purpose of the act. In this context the statute must be read to include manufacturers. Manufacturers, just like architects, engineers, contractors, and subcontractors, need protection from individuals whose negligence in maintaining an improvement to real property may cause liability." Qualitex, 557 A.2d at 853 (internal citation and quotations omitted).
The Supreme Court then observed that not only did ITT Grinnell qualify as a manufacturer for purposes of § 9-1-29, but that because it had designed, manufactured, inspected and installed the allegedly defective product, it also qualified as a "material man" under the Act. Seeid. ("As manufacturer, installer, and supplier, ITT Grinnell, we find, is a material man for purposes of § 9-1-29.") (Emphasis added.)
The Supreme Court defined the term material man "as one who `furnish[es] materials or supplies used in the construction or repair ofa building [or] structure.'" Qualitex, Inc. v. *Page 7 Coventry Realty Corp., 557 A.2d at 853 (R.I. 1989) (emphasis added) (quoting Black's Law Dictionary 881 (West 5th ed.1979)). It is noteworthy that this definition refers to buildings and structures in the singular rather than in the plural. Juxtaposing this definition with the Supreme Court's conclusion that Grinnell was a material man for purposes of the Act because it manufactured, installed, and supplied its product, the Court concludes the Legislature did not intend to protect manufactures and suppliers of products who were not somehow directly involved in specific construction or improvement projects. To interpret otherwise essentially would eviscerate § 9-1-29 because it would serve to protect every manufacturer and/or supplier whose products may have been used in construction or improvement projects, regardless of how far removed such manufacturer was from the process, and irrespective of how peripheral its products may have been to those projects.
Furthermore although § 9-1-20 concerns a statue of limitations, this Court finds that the Legislature did not intend for this provision to protect manufacturers who might misrepresent or conceal the safety of their products that they supply to wholesalers and retailers, while knowing that such misrepresentation or concealment poses a safety risk to users of their products. See § 9-1-20.[3] Additionally, in light of its obvious concern for individuals suffering from asbestos-related disease, it is unlikely that the Legislature intended to protect manufacturers that somehow were not directly involved in the installation phase of a construction or improvement project, or did not directly supply its products to those projects. See § 23-24.5-15.[4] *Page 8 
In the instant matter, there exist genuine issues of material fact as to whether Kaiser has made a threshold demonstration with respect to the "construction of an improvement" in order to trigger the application of § 9-1-29 at the summary judgment stage. In his deposition, Mr. Plympton's testified that he used Kaiser-manufactured joint compound both in new construction, as well as for "minor renovations." Whether a minor renovation amounted to a mere repair rather than the construction of an improvement constitutes a genuine issue of material fact. Furthermore, there exist genuine issues of material fact as to whether Kaiser was involved directly in the installation of its products that allegedly contained asbestos and to which Mr. Plympton allegedly was exposed. There also exist genuine issues of material fact as to whether Kaiser directly supplied Mr. Plympton with its products, particularly where Mr. Plympton testified that he purchased joint compound from lumberyards. Consequently, Kaiser's Motion for Summary Judgment is denied.
 IV Conclusion
For the foregoing reasons, the Court denies Kaiser's Motion for Summary Judgment. Counsel shall submit the appropriate order for entry.
[1] Wayne Plympton was a party plaintiff until his death on November 1, 2005.
[2] Section 8-2-14(a) provides in pertinent part:
 "The superior court shall have original jurisdiction of all actions at law where title to real estate or some right or interest therein is in issue, accept actions for possession of tenements let or held at will or by sufferance; and shall have exclusive original jurisdiction of all other actions at law in which the amount in controversy shall have exceed the sum of ten thousand dollars ($10,000). . . ."
[3] Section 9-1-20, entitled "Time of Accrual of Concealed Cause of Action," provides:
 "if any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence."
[4] Section 23-24.5-15 entitled "Duties of Physicians Regarding Asbestos Related Disease," provides in pertinent part:
 "Notwithstanding any other law to the contrary, the statue of limitations for any personal injury or property damage relating to asbestos or asbestiform materials for any cause of action now pending or which may be pending in the future shall not begin to run until notice to the patient or the patient's next-of-kin is filed as set forth in subsection (b), or in the case of pending matters when a physician in writing had notified the patient or next-of-kin." Section 23-24.5-15(c). *Page 1