Cara BENASKI

v.

Carl WEINBERG, in his capacity as President of the Summit at Warwick Executive Park Condominium Association et al.

No. 2005–232–Appeal.

Supreme Court of Rhode Island.

June 12, 2006.

Kris M. Marotti, Warwick, for Plaintiff.

Gary J. Mena, Brockton, MA, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The plaintiff, Cara Benaski, experienced a sequence of unfortunate events in the Warwick Executive Office Park (office park) on a day when the area was in the throes of a snowstorm, culminating in personal injuries she suffered when she slipped and fell on a roadway in the office park. Ms. Benaski later filed a negligence action against the owner of the office park, its officers, and various people and entities responsible for its management, maintenance, and snow removal. She now appeals from a grant of summary judgment in favor of certain defendants, arguing that unusual circumstances existed that warrant a departure from the general rule that affords a business invitor a reasonable time after a storm to clear snow and ice.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issue raised in this appeal should not be decided summarily. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument. For the reasons stated herein, we affirm the judgment of the Superior Court.

### Facts and Procedural History

On December 8, 2000, plaintiff spent much of her morning at the office park attending meetings for work. At approximately 11:30 a.m., after her final meeting ended, plaintiff was descending a snow-covered roadway, the only means of egress from the office park, when her vehicle slid off the road and into a fire hydrant at the base of the sloping grade. Leaving her vehicle at the scene of the collision, plaintiff proceeded to a nearby office building to call and report the incident to her insurance company, a representative of which directed her to make a police report. To that end, plaintiff approached a police officer who, taking information in connection with an unrelated vehicle collision, instructed plaintiff to return to her vehicle and remain there until another officer arrived. As she walked down the wintry road to her damaged vehicle, plaintiff slipped and fell, injuring her left knee and right elbow. It is undisputed that heavy snowfall, which had begun the night before, continued to beleaguer the office park during plaintiff's mishaps, only after which was the roadway treated and cleared of snow.

On December 4, 2003, plaintiff filed the instant action alleging that defendants were negligent in allowing the accumulation of ice and snow and creating an unsafe condition on the roadway. On February 7, 2005, all defendants but one filed a motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure.[1] A motion justice heard and granted defendants' motion on April 25, 2005, finding that the facts in this case did not present any unusual circumstances that would trigger defendants' duty of care until a reasonable time after the cessation of the snowstorm. Judgment entered on April 27, 2005, from which plaintiff timely appealed.[2]

1. The defendant, DCI Construction, Inc. (DCI), did not join in the February 7 motion, but filed a separate motion for summary judgment on May 25, 2005. It appears from the record that the motion DCI filed is pending in the Superior Court in anticipation of our opinion in this case.

2. At the request of defense counsel, judgment entered under Rule 54(b) of the Superior Court Rules of Civil Procedure, presumably

## Standard of Review

This Court reviews *de novo* a decision of the Superior Court to grant summary judgment, "applying the same rules and standards as those employed by the justice" below. *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002). "[W]e will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.2005) (quoting *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002)). Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Tanner v. Town Council of East Greenwich*, 880 A.2d 784, 791 (R.I.2005) (quoting *Lucier*, 864 A.2d at 638).

## Discussion

A fundamental principle of tort law, and a dispositive one based on the circumstances of this case, is that "[a] defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff." *Lucier*, 864 A.2d at 638 (quoting *Santucci v. Citizens Bank of Rhode Island*, 799 A.2d 254, 256 (R.I. 2002)). The determination of whether a duty exists in a particular case is a question of law for the trial justice. *Kuzniar v. Keach*, 709 A.2d 1050, 1055 (R.I.1998). "[N]o clear-cut formula for creation of a duty exists that can be mechanically applied to each and every negligence case." *Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 206

(R.I.1994). The approach is essentially *ad hoc* and turns on the particular facts and circumstances of a given case. *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I.1994). Malleable and illustrative factors we have recognized include "the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations and notions of fairness." *Mallette v. Children's Friend and Service*, 661 A.2d 67, 70 (R.I.1995) (quoting *Kenney Manufacturing Co.*, 643 A.2d at 206). "If no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Lucier*, 864 A.2d at 639 (quoting *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I.1987)).

Our seminal case in the jurisprudence of snow removal is *Fuller v. Housing Authority of Providence*, 108 R.I. 770, 279 A.2d 438 (1971). In *Fuller*, this Court eschewed the so-called "Massachusetts Rule," which provides that a landlord has no legal obligation to remove the natural accumulation of snow and ice from common areas, thereby abrogating our earlier holding endorsing that rule in *Pomfret v. Fletcher*, 99 R.I. 452, 456, 208 A.2d 743, 745 (1965). *Fuller*, 108 R.I. at 772–73, 279 A.2d at 440; *see also Woods v. Naumkeag Steam Cotton Co.*, 134 Mass. 357, 361 (1883) (setting forth the above-defined rule). Instead, we adopted the "Connecticut Rule," which provides, as this Court then applied it, that a landlord owes a duty to his or her tenants "to use reasonable care to see that the common areas are kept reasonably safe from the dangers created by an accumulation of snow and ice which is attributed to purely natural causes." *Fuller*, 108 R.I. at 772, 279 A.2d at 440 (citing *Reardon v. Shimelman*, 102 Conn. 383, 128 A. 705 (1925)). In adopting

because DCI had not joined in the motion *sub judice*.

the Connecticut Rule, however, we acknowledged that "a landlord is not a guarantor for the safety of his tenants[.] * * * The mere accumulation of snow or ice does not ipso facto make the landlord liable; [the landlord] must be given a reasonable time after the storm has ceased to remove the accumulation * * *." *Fuller,* 108 R.I. at 774, 279 A.2d at 441; *see also Barenbaum v. Richardson,* 114 R.I. 87, 93, 328 A.2d 731, 734 (1974) ("A landlord is not required to be at his property, shovel in hand, catching the flakes before they hit the ground.").

In *Terry v. Central Auto Radiators, Inc.,* 732 A.2d 713, 716 (R.I.1999), we expanded the application of the Connecticut Rule beyond the landlord-tenant context of *Fuller* to a situation involving a business invitor and business invitee. The plaintiff in *Terry* injured herself on rutted ice in the rear parking lot of the defendant's automobile repair shop as she attempted to retrieve her vehicle. *Id.* at 715. The plaintiff had parked her automobile at the front of the shop earlier that morning for service, but the defendant, having performed the necessary repairs, relocated the vehicle about 100 feet away, behind the business premises. *Id.* at 714–15. We began our analysis by examining the actual expanse of the Connecticut Rule, which, more fully revealed, "permits a landlord, or in this case the business invitor, to 'await a reasonable time after the end of a storm to clear snow and ice *only in the absence of unusual circumstances.'* " *Id.* at 717 (quoting *Cooks v. O'Brien Properties, Inc.,* 48 Conn.App. 339, 710 A.2d 788, 792 (1998)); *see also Kraus v. Newton,* 211 Conn. 191, 558 A.2d 240, 243 (1989). Addressing the matter before us in *Terry,* although we recognized that the plaintiff subjected herself to some risk of injury by returning to the repair shop while the storm continued, we reasoned that the defendant's positive act of relocating the

plaintiff's vehicle over dangerous terrain was an "unusual circumstance" because it "exacerbated and increased the risk of the plaintiff's falling." *Terry,* 732 A.2d at 717, 718. As such, we held that the defendant's duty of reasonable care triggered *before* a reasonable time after the storm ended; and, therefore, we ordered a new trial for factual resolution of whether the defendant had breached that duty. *Id.* at 718–19.

The plaintiff relies on *Terry* to support her allegation that the motion justice erroneously granted summary judgment. Specifically, plaintiff argues that several factors, when viewed collectively, rise to the level of "unusual circumstances." The plaintiff's proffered variables are as follows: (1) the slopping roadway was the only means of egress from the office park, which lacked sidewalks; (2) defendants failed to plow the roadway before the start of business, as was routine when snow had fallen overnight; (3) defendants failed to conduct daily inspections of the property and had no policy in place to do so; (4) defendants failed to post signs warning of the dangerous conditions; (5) Warwick police responded to five separate and nearby motor vehicle accidents between 11:24 a.m. and 12:15 p.m.; and (6) for a period, presumably in the afternoon, the Warwick Fire Department closed access to the office park's roadway. The amalgamation of these factors, plaintiff argues, is sufficiently extraordinary to advance the beginning of defendants' duty to exercise reasonable care to some point before the close of the storm, thereby rendering summary judgment improper in this case.

■ This Court, viewing the evidence in the light most favorable to the plaintiff, finds nothing particularly unusual about these circumstances that warrant the acceleration of the defendants' duty under *Terry.* The linchpin of our duty analysis

in *Terry* was the presence of a heightened risk, associated with a lengthy trek across an ice-ridden parking lot, created by the business invitor. *See Terry,* 732 A.2d at 718n.7 ("[A]ny duty owed by a business invitor to an invitee is to be evaluated in light of any unusual circumstances that have been created by the business invitor and left to exist at the particular time and place and which results in injury to the business invitee."). The variables that the plaintiff points to in this case, viewed individually or in aggregate, do not exhibit any behavior on the defendants' part that exacerbated the risk that the plaintiff voluntarily undertook by commuting to and from the office park during a severe winter storm. Consequently, because the plaintiff has failed to show the presence of any unusual circumstances, we conclude that no genuine issue of material fact exists and that the defendants are entitled to judgment as a matter of law.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court, to which we remand the record.

Justice FLAHERTY did not participate.