ESTATE OF Louis J. GIULIANO,
Sr., et al.

v.

Louis J. GIULIANO, Jr.

No. 2007–100–Appeal.

Supreme Court of Rhode Island.

June 20, 2008.

Jeffrey Techentin, Esq., Providence, for petitioner.

Thomas Dickinson, Esq., for respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, Louis J. Giuliano, Jr., appeals from the entry of summary judg-

ment in favor of the plaintiffs, the Estate of Louis J. Giuliano, Sr., and Patricia Lett.

This case came before the Supreme Court for oral argument on May 14, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time.

For the reasons set forth below, we reverse the Superior Court's grant of summary judgment.

## Facts and Travel

### 1. The Probate Court Proceedings

On February 8, 2006, defendant's father, Louis J. Giuliano, Sr., died. Shortly after the senior Mr. Giuliano's death, Patricia Lett, on behalf of the Estate of Louis J. Giuliano, Sr., filed with the Probate Court for the Town of Smithfield a petition to probate the purported will of Mr. Giuliano.[1] Ms. Lett was the named executrix of the will, which specified that after debts, expenses, and taxes were paid, tangible property designated in any letter of instructions was distributed, and jointly held accounts became the property of the living joint holders of those accounts, the residue of the decedent's estate would be distributed to a trust that the decedent and Ms. Lett had established before he created the will.

The defendant (decedent's son) objected to the probate of the will, challenging the authenticity of the testator's signature; he

---

1. In view of our holding today, the validity *vel non* of the purported will is yet to be determined. Accordingly, at this stage, the document at issue is only a "purported will." *See*

G.L.1956 § 33–7–26. For the sake of conciseness, however, we shall hereinafter refer to it simply as "the will."

alleged that it was not actually his father's signature. On April 27, 2006, a hearing was held before the Probate Court. The attorney who drafted the will (the Drafting Attorney) testified at that hearing that he specifically recalled the decedent's execution of the will. In an affidavit[2] notarized by the Drafting Attorney, the signatures of two other attorneys (to whom we shall refer as Signer One and Signer Two) appeared beneath a statement that was a part of the affidavit; that statement declared (1) that the signers had, in the presence of each other, witnessed the execution of the will by the decedent and (2) that the decedent appeared to be of sound mind.

At the hearing in the Probate Court, the Drafting Attorney also testified that the two persons who signed the affidavit had witnessed the execution of the will. Signer One testified that he had witnessed the decedent's execution of the will, which occurred in a conference room at his law firm; he testified, however, that he could not recall if Signer Two was present at the same time as he had witnessed the will. Signer Two testified that he did not have a specific recollection of the events that occurred during the execution of the will because so many years had passed. Signer Two did identify the witness signature as his own. Offering the Probate Court an interpretation based on the "normal course of action" that his law firm would have followed when a will was executed there, Signer Two testified that, "based on past patterns and practices," he believed that the decedent had signed the will in his presence as well as in the presence of Signer One and that they then had signed in the presence of each other.

Testimony was offered in support of defendant's challenge to the authenticity of the decedent's signature that appeared on the will. The decedent's former wife, his daughter, and his son (defendant) all identified documents on which the decedent's signature appeared. Curtis Baggett, a handwriting expert, compared documents containing the decedent's known signature with the signature on the will, and he concluded that the signature on the will was not the decedent's own. He offered testimony concerning his methodology in examining the signatures and his findings on the technical differences between the shape of letters in the known signatures and the signature on the will. Mr. Baggett testified that it was his opinion that the signature on the will was not the true signature of Louis J. Giuliano, Sr.[3]

On July 21, 2006, the judge who presided over the hearing in the Probate Court issued a written decision concerning defendant's objection to the probate of decedent's will. The judge concluded that neither side's handwriting expert was particularly persuasive, but he added that he thought the methodology that plaintiffs' expert used was more generally accepted in the field. He stated that the testimony of the three attorneys established that the signature on the will was "more probably than not" the signature of the decedent.

---

2. A Rhode Island statute, discussed later in this opinion, authorizes the use of what is often referred to as a "self-proving" or "self-executing" affidavit as a basis for the admission of a will to probate under certain specified circumstances.

3. It appears from the record that plaintiffs also introduced the testimony of a handwriting expert during the proceedings before the Probate Court; the transcript of this testimony was not found in the record submitted to this Court, but we can infer from the Probate Court judge's decision that plaintiffs' expert testified that the signature was authentic.

Nevertheless, the judge denied plaintiffs' petition for the probate of the will on the grounds that the witnesses to the will's execution could not remember whether they had witnessed the decedent sign the will in the presence of each other or whether they signed as witnesses in the decedent's presence. The Probate Court judge found as follows:

> "[T]he proponents have not shown more probably than not that both witnesses signed in the presence of the testator and in the presence of each other or that both witnesses were present at the same time. These are essential elements."

Accordingly, the judge ruled that, because plaintiffs could not demonstrate that the statutory requirements had been met, the petition to probate the will would be denied. The judge entered an order to that effect on August 3, 2006.

### 2. The Superior Court Proceedings

Thereafter, on August 31, 2006, plaintiffs filed a complaint[4] in the Superior Court in which they asked the Superior Court to order the Probate Court to admit the will to probate. In that document, plaintiffs argued that the Probate Court judge had erroneously concluded that the will was not properly executed.

In November of that year, plaintiffs filed a motion for summary judgment; they asserted that the affidavit attached to the will established that there was no dispute that the witnesses to the will signed in the presence of the decedent and each other and that the decedent signed in the witnesses' presence. The plaintiffs argued that the statutory requirements for executing the will had been met and that the case should be remanded to the Probate Court with an order that that court admit the will to probate.

For his part, defendant objected to plaintiffs' contention, arguing that genuine issues of material fact existed with respect to the proper execution *vel non* of the will. Pointing to the fact that the witnesses were unable to state whether or not they had witnessed the decedent's signature in each other's presence, defendant asserted that summary judgment would be inappropriate. In addition, defendant submitted an affidavit from Curtis Baggett, the handwriting expert, in which Mr. Baggett opined that the decedent did not sign the will.

On January 2, 2007, a hearing was held in the Superior Court on plaintiffs' motion for summary judgment.

With respect to the handwriting expert's affidavit, the hearing justice remarked that it "doesn't say much." In response to that remark, counsel for defendant stated that the basis for Mr. Baggett's conclusions was set forth more fully in his testimony before the Probate Court. The hearing justice concluded that, because the affidavit was "so cursory," she was unable to find a genuine question of material fact. Reading the affidavit, the hearing justice stated:

> "All he says is, 'I base my opinion on my analysis of the signatures on the known and question[ed] documents and my use of accepted forensic document examination tools, principles and techniques.'"

After having quoted those words from the expert's affidavit, the hearing justice sardonically commented:

> "Well, that's helpful.
>
> " * * *
>
> "How can I say, 'Oh, wow, this dispute is genuine.'?"

The hearing justice characterized the content of the handwriting expert's affidavit

---

**4.** The document that plaintiffs filed for the purpose of appealing to the Superior Court from the Probate Court was entitled "Complaint."

as "a bald statement," and she questioned how such "a bald statement" could be a predicate for the denial of summary judgment.

Counsel for defendant countered the hearing justice's queries by articulating the reasons why defendant thought the case should proceed beyond the summary judgment stage. He contended that the dispute was genuine in view of the fact that, in counsel's words, "a witness with the suitable qualifications is testifying in that affidavit that his professional conclusion is that the signatures are not genuine." He further argued:

> "I think in the case where we're talking about the genuineness of a signature, your Honor, and the document examiner says that * * * his professional conclusion is that the signature is not genuine, that that does raise an issue of fact for the trier of fact."

The hearing justice disagreed with defendant's arguments in opposition to plaintiffs' motion for summary judgment. She stated:

> "I'm going to grant the motion. I'm not satisfied that based on this affidavit that the dispute is a genuine dispute. I understand that experts can't be expected to detail every bit of their findings in an affidavit, or even in an interrogatory answer, or even in deposition testimony, but he has not come forward to give me enough so that I can, with confidence, say that this dispute is genuine. As I said before, I think the legislature enacted this whole process of self-executing affidavits to create some sort of presumptive effect. I don't think I've completely thought it through, but that's what I see that we have here, and the question is whether this is enough to get us by and shift the burden on to the estate."

The hearing justice additionally remarked that she did not believe the handwriting expert's affidavit overcame the "presumptive effect" of the self-executing affidavit. The hearing justice further stated that, because she could not "say with confidence" that a genuine dispute existed in the case, she would grant plaintiffs' motion for summary judgment.

In an order entered on January 4, 2007, the hearing justice sustained plaintiffs' probate appeal and ordered that the will be admitted to probate. The defendant filed a notice of appeal to this Court on January 16, 2007.

### 3. The Issues on Appeal

On appeal, defendant presents two arguments in support of his claim that this Court should reverse the judgment of the hearing justice: (1) that the self-executing affidavit is not sufficient to establish that all of the requirements for probating the will were satisfied; and (2) that he raised a genuine issue of material fact with respect to the authenticity of the decedent's signature on the will. The defendant contends that these two issues should have precluded the hearing justice from granting plaintiffs' motion for summary judgment.

The plaintiffs assert (1) that defendant improperly relied on the proceedings before the Probate Court to try to create a genuine issue of material fact; and (2) that the hearing justice appropriately granted their motion for summary judgment because the handwriting expert's affidavit was conclusory and failed to set forth sufficient facts in support of his opinion that the decedent did not sign the will.

### Standard of Review

■ Summary judgment is "a drastic remedy," and a motion for summary judgment should be dealt with cautiously. *Ardente v. Horan,* 117 R.I. 254, 256–57, 366

A.2d 162, 164 (1976) ("Summary judgment is a drastic remedy and should be cautiously applied * * *."); *see also DePasquale v. Venus Pizza, Inc.*, 727 A.2d 683, 685 (R.I. 1999) ("This Court has consistently acknowledged that summary judgment is a harsh remedy that must be applied cautiously."); *Sjogren v. Metropolitan Property and Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I.1997).

The summary judgment papers filed by the movant must seek to establish that there exists no genuine dispute with respect to the material facts of the case. If the movant satisfies that requirement, the nonmovant must point to evidence showing that a genuine dispute of material fact does exist. *See Benaski v. Weinberg*, 899 A.2d 499, 502 (R.I.2006); *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 631–32 (R.I.1998). The nonmovant must, by competent evidence, prove the existence of a disputed issue of material fact. *Benaski*, 899 A.2d at 502. The nonmovant may not rely upon "mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Tanner v. Town Council of East Greenwich*, 880 A.2d 784, 791 (R.I.2005) (internal quotation marks omitted).

A hearing justice who passes on a motion for summary judgment "must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion." *Steinberg v. State*, 427 A.2d 338, 340 (R.I.1981). The hearing justice may grant the motion for summary judgment only if, after conducting that required analysis, he or she determines that "no issues of material fact appear and the moving party is entitled to judgment as a matter of law * * *." *Id.*

It is important to bear in mind that the "purpose of the summary judgment procedure is issue finding, not issue determination." *Industrial National Bank v. Peloso*, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979); *see also Saltzman v. Atlantic Realty Co.*, 434 A.2d 1343, 1345 (R.I.1981); *Steinberg*, 427 A.2d at 340 ("[I]n ruling on a motion for summary judgment, the trial justice must look for factual issues, not determine them."); *O'Connor v. McKanna*, 116 R.I. 627, 633, 359 A.2d 350, 353 (1976) ("[I]n passing on a motion for summary judgment, the question for the trial justice is whether there is a genuine issue as to any material fact and not how that issue should be determined.").

This Court reviews the granting of a motion for summary judgment on a *de novo* basis; in so doing, we employ the same rules and standards that the hearing justice used. *Benaski*, 899 A.2d at 502; *see also O'Sullivan v. Rhode Island Hospital*, 874 A.2d 179, 182 (R.I.2005); *Gliottone v. Ethier*, 870 A.2d 1022, 1027 (R.I.2005); *DePasquale*, 727 A.2d at 685. Summary judgment will be upheld by this Court only if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Liberty Mutual Insurance Co. v. Kaya*, 947 A.2d 869, 872 (R.I. 2008) (noting that this Court will "affirm a summary judgment only when, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact remains to be decided, and that the moving party is entitled to judgment as a matter of law") (internal quotation marks omitted); *see also American Express Bank, FSB v. Johnson*, 945 A.2d 297, 299 (R.I.2008); *Lacey v. Reitsma*, 899 A.2d 455, 457 (R.I.2006).

## Analysis

### I. The Self–Executing Affidavit

Pursuant to the Rhode Island General Laws, any "person of sane mind and eigh-

teen (18) years or older in age, may devise, bequeath, or dispose of, by his or her will, executed in the manner required by [statute], all real estate and all personal estate * * *." G.L.1956 § 33-5-2. Importantly, for a will to be admitted to probate, the will must meet the specific requirements set forth in the General Laws.[5]

Section 33-5-5 sets forth the criteria governing the validity of a will in Rhode Island. It provides in pertinent part as follows:

> "No will shall be valid * * * unless it shall be in writing and signed by the testator, or by some other person for him or her in his or her presence and by his or her express direction; and this signature shall be made or acknowledged by the testator in the presence of two (2) or more witnesses present at the same time, and the witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary, and no other publication shall be necessary." *Id.*

Therefore, a valid will in Rhode Island must be signed by the testator in the presence of two witnesses; those witnesses, in turn, must sign the will in the presence of each other.

General Laws 1956 § 33-7-26 authorizes a particular procedure for proving a purported will or codicil—which procedure is at issue in the instant case. That statute allows for the use of oral testimony or the submission of an affidavit to prove the validity of a will and therefore justify its admission to probate. Section 33-7-26 provides in pertinent part:

> "In the absence of objection by anyone interested in the estate of a deceased person, the probate court may admit to probate a purported will or codicil of the deceased person upon oral testimony or affidavit in the following manner:
>
> "(1) The oral testimony of any one of the subscribing witnesses as to the due execution of any purported will or codicil shall constitute sufficient evidence thereof.
>
> "(2) An affidavit by the subscribing witnesses or any one or more of them, to any purported will or codicil, executed at any time after execution of the will or codicil, whether before or after the death of the testator, before any officer authorized to administer oaths in or out of this state, stating the facts as the witnesses or witness would be required to testify to in court to prove the will or codicil, shall constitute sufficient evidence of the due execution of the purported will or codicil."

The statute goes on to provide an acceptable form for the affidavit described in subparagraph (3) of § 33-7-26—an affidavit that is commonly referred to as a self-executing or self-proving affidavit.

■ Pursuant to the explicit terms of the statute, such an affidavit can serve as

---

5. The rationale that underlies the strict requirements surrounding the execution of wills has been cogently described in a law review article:

> "Although the primary purpose of succession laws is realization of the decedent's intent, statutes intercede to thwart even the dearest goals of a would-be-testator * * *.
>
> "Naturally, the purpose of these statutes, which set forth the requirements for a valid will, is not to convert the will-writing process into a game of connect-the-dots. The statutory requirements are generally straightforward, and as long as the testator is careful, she [or he] should succeed in meeting these requirements." Julia E. Swenton, *The Missing Piece: The Forgotten Role of Testator Intent in the Application of the Doctrine of Dependent Relative Revocation in Oklahoma*, 59 Okla. L.Rev. 205, 205 (2006).

proof of the facts that the affiant(s) "would be required to testify to in court to prove the will"—**if, but only if,** there is "the absence of objection by anyone interested in the estate." Section 33–7–26. In his appeal to this Court, defendant has properly emphasized that such an affidavit serves as proof of the proper execution of a will only in the absence of an objection by an interested party. In view of the fact that defendant did, in fact, object to the probate of the will, he contends that the Superior Court's ruling that the will should be admitted to probate was improper. We agree.

Inasmuch as the hearing justice's decision to grant plaintiffs' motion for summary judgment rested on her perception that the self-executing affidavit created a "presumptive effect" of the will's validity,[6] we observe that our statutory law governing the use of such a document expressly stipulates that its function is to establish the validity of a will in a case in which there is an "absence of objection by anyone interested in the estate." Section 33–7–26. This is not such a case. As indicated above, defendant did object to the probate of his father's will; although the self-executing affidavit may offer some evidentiary value to the outcome of this case, we are unable to view it as determinative at the summary judgment stage.

 Because defendant did indeed object to the probate of the will, it is clear from the express language of § 33–7–26 that the affidavit cannot alone serve as sufficient evidence to admit the will to probate; because the testimony of the signing attorneys raises questions about their presence during the will's execution, we conclude that a genuine issue of material fact exists with respect to whether or not the will was properly executed.

Accordingly, we conclude that this genuine issue of material fact caused the granting of summary judgment by the Superior Court to have been inappropriate.

## II. The Authenticity *Vel Non* of the Signature on the Will

 Additionally, defendant argues that he sufficiently pointed to another genuine issue of material fact—*viz.*, the issue of the authenticity *vel non* of the signature on the will; he contends that his showing in that regard should have precluded the hearing justice from granting plaintiffs' motion for summary judgment. We agree with defendant.

Our examination of the record in this case leads us to the ineluctable conclusion that a material factual dispute exists with respect to the issue of whether the signature that appears on the will is authentic.[7] We disagree with the hearing justice's conclusion that the affidavit of defendant's handwriting expert, Mr. Baggett, constituted an insufficient showing that there was a genuine factual dispute about the signature for the purposes of Rule 56 of the Superior Court Rules of Civil Procedure. While Mr. Baggett's affidavit was certainly somewhat laconic, he did sufficiently (1) provide information concerning his expertise as a document examiner; (2) indicate the documents that he examined;

6. The hearing justice remarked that she did not believe that the affidavit of defendant's handwriting expert overcame the "presumptive effect" of the self-executing affidavit; she then stated that, because she could not "say with confidence" that a genuine dispute existed in the case, she would grant plaintiffs' motion for summary judgment.

7. It should go without saying that the authenticity *vel non* of signatures on documents is always a matter of grave concern in our judicial system. *See generally Rockdale Management Co. v. Shawmut Bank, N.A.,* 418 Mass. 596, 638 N.E.2d 29 (1994). For obvious reasons, that concern is heightened where the probate of wills is concerned.

(3) summarize the examination technique that he employed (*viz.*, comparing the signatures on the "questioned" documents with the signatures on the "known" documents); and (4) set forth his "professional conclusion and expert opinion that the signatures on the [questioned] documents were signed by someone other than Louis Giuliano, Sr. * * *."

Even though the handwriting expert's affidavit was less than replete with information about the methodology that he employed before reaching his expert conclusion, it was at least minimally adequate to satisfy the obligation of defendant (the nonmovant) to show the presence of a "genuine issue as to [a] material fact." Rule 56(c). The affidavit was sufficient to accomplish what a nonmovant must do in order to defeat a facially proper motion for summary judgment; it was far from being an improper compilation of "naked conclusionary assertions that there may be underlying but unarticulated admissible and supporting evidentiary facts which, if uncontroverted, might serve as grounds for the relief sought." *Harold W. Merrill Post No. 16 American Legion v. Heirs-at-Law of Smith,* 116 R.I. 646, 648, 360 A.2d 110, 112 (1976); *see also Carrozza v. Carrozza,* 944 A.2d 161, 164 (R.I.2008); *Roitman & Son, Inc. v. Crausman,* 121 R.I. 958, 959, 401 A.2d 58, 59 (1979) (mem.).

. We conclude that there is indeed a "genuine issue" of material fact with respect to the authenticity of the testator's signature. Although the hearing justice determined that she could not "say with confidence" that a genuine dispute exists in this case, we do not understand our caselaw to mandate such a requirement of "confidence" on the part of the hearing justice.[8] Rather, we have stated that summary judgment is to be employed cautiously because it is such an extreme remedy; summary judgment should occasion the termination of a case only where it is absolutely clear "that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *American Express Bank, FSB,* 945 A.2d at 299 (internal quotation marks omitted).

### Conclusion

In view of the record before us, we conclude that summary judgment was improperly granted. Two issues of material fact perdure in this case: (1) whether or not the will was executed in accordance with the statutory requirements; and (2) whether or not the signature on the will is genuine. The resolution of those issues should not have been foreclosed by summary judgment.[9]

For the reasons set forth in this opinion, we reverse the Superior Courts grant of summary judgment. The papers in this

**8.** *See Mitchell v. Mitchell,* 756 A.2d 179, 185 (R.I.2000) (stating that the purpose of summary judgment "is not to cull out the weak cases from the herd of lawsuits waiting to be tried" and further stating that "only if the case is legally dead on arrival should the court take the drastic step of * * * granting summary judgment"); *see also Rodrigues v. DePasquale Building and Realty Co.,* 926 A.2d 616, 622 (R.I.2007).

**9.** While we express absolutely no view about the authenticity issue at this stage of the litigation, it may well be that the trier of fact will ultimately give short shrift to defendant's at-

tempt to challenge the authenticity of the signature at issue; but it is also entirely possible that the trier of fact will reach the opposite conclusion. For today's purposes, however, that is precisely the point: under our Rule 56 jurisprudence, this is an issue that must be scrutinized and decided by a trier of fact. *See Gliottone v. Ethier,* 870 A.2d 1022, 1027 (R.I. 2005). The *weight* of the evidence should not be evaluated at the summary judgment stage. *Steinberg v. State,* 427 A.2d 338, 340 (R.I. 1981); *see also Doyle v. State,* 122 R.I. 590, 411 A.2d 907, 909 (1980); *see generally Beaton v. Malouin,* 845 A.2d 298 (R.I.2004).

case may be remanded to the Superior Court.