DECISION
Before this Court is Kentile Floors, Inc.'s ("Defendant" or "Kentile") Motion for Summary Judgment based upon Rhode Island's Immunity from Liability for Constructors of Improvements to Real Property. G.L. 1956 § 9-1-29. Alan R. Sharp[1] and Pearl Hopkins (collectively, "Plaintiffs") object to Defendant's Motion. Based on the foregoing, this Court finds that § 9-1-29 does not insulate Defendant, a manufacturer of a product containing a hazardous substance, from liability as a matter of law. Accordingly, Defendant's Motion is denied. Jurisdiction is pursuant to Super. R. Civ. P. 56 and G.L. 1956 § 8-2-14.
 I Facts and Travel
Pertinent to the instant motion, Plaintiff Alan R. Sharp ("Mr. Sharp") was a tool maker and pipefitters' supervisor at General Electric ("GE") in Pittsfield, Massachusetts, for thirty-three years. (2d Am. Compl. ¶¶ 5, 6.) While Mr. Sharp was employed at the Pittsfield plant between 1970 and 1979, GE renovated two office buildings at the site. (Sharp Dep. Vol. I 101:1-18 Nov. 12, 2008; Sharp Dep. Vol. IV 71:5-9 Dec. 11, 2008.) The renovation allegedly consisted of the complete removal and reinstallation of floor tiles in the offices. (Sharp Dep. Vol. I 104:5-13.) *Page 2 
Mr. Sharp states that although he was not personally involved with the tile removal or installation, he did observe the carpenters retiling the floors with Kentile brand tiles. Id. 105:13-23. Mr. Sharp did not know the brand of tiles that were removed.Id. 105:17-19. Plaintiffs allege that the Kentile tiles contained asbestos and as a result of Mr. Sharp's exposure to them (combined with exposures to other Defendants' products), he contracted "asbestos-related mesothelioma and/or other asbestos related pathologies." (2d Am. Compl. ¶¶ 5, 6.) Accordingly, on or about October 8, 2008, Plaintiffs filed the instant action sounding in negligence, breach of warranty, and loss of consortium against numerous defendants, including Kentile. Plaintiffs amended their Complaint twice, most recently on or about August 19, 2009.
Kentile now moves for Summary Judgment pursuant to Super. R. Civ. P. 56(c)[2] and based on § 9-1-29 immunity for constructors of improvements to real property. Defendant filed its Motion on or about September 9, 2009. Plaintiffs submitted an objection to the Motion on or about June 15, 2010, and Defendant replied to their objection on or about July 12, 2010. This Court heard oral argument from both parties on July 21, 2010.
 II Standard of Review
Summary judgment is "a drastic remedy," and a motion for summary judgment should be dealt with cautiously. Estate of Giuliano v.Giuliano, 949 A.2d 386, 390-91 (R.I. 2008) (citations omitted). On such a motion, this Court reviews the evidence and draws all reasonable *Page 3 
inferences in the light most favorable to the nonmoving party.Credit Union Central Falls v. Groff,966 A.2d 1262, 1267 (R.I. 2009) (quoting Lucier v. ImpactRecreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)); Lennon v.MacGregor, 423 A.2d 820, 822 (R.I. 1980) ("[T]he court may not pass on the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion.").
"The summary judgment papers filed by the movant must seek to establish that there exists no genuine dispute with respect to the material facts of the case." Giuliano, 949 A.2d at 391. "If the movant satisfies that requirement, the nonmovant must point to evidence showing that a genuine dispute of material fact does exist." Id. (citing Benaski v. Weinberg,899 A.2d 499, 502 (R.I. 2006); Superior Boiler Works,Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631-32 (R.I. 1998)). The nonmovant must, by competent evidence, prove the existence of a disputed issue of material fact. Benaski, 899 A.2d at 502. The nonmovant may not rely upon "mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v.Town Council of East Greenwich, 880 A.2d 784, 791 (R.I. 2005) (internal quotation marks omitted). "The hearing justice may grant the motion for summary judgment only if, after conducting that required analysis, he or she determines that `no issues of material fact appear and the moving party is entitled to judgment as a matter of law. . . .'" Giuliano, 949 A.2d at 391 (citingSteinberg, 427 A.2d at 340). "It is important to bear in mind that the `purpose of the summary judgment procedure is issue finding, not issue determination.'" Giuliano,949 A.2d at 391 (quoting Industrial National Bank v. Peloso,121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979)). "Therefore, summary judgment should enter `against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . .'" *Page 4 Lavoie v. North East Knitting, Inc.,918 A.2d 225, 228 (R.I. 2007) (quotingCelotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (analyzing the analogous federal rule for summary judgment)).
 III Analysis A Constructors of Improvements to Real Property Statute of Repose — § 9-1-29
At issue in this instant case is whether Kentile is shielded by § 9-1-29, which provides statutory "immunity of liability" for "constructors of improvements to real property." Our Supreme Court definitively has established that § 9-1-29 is a statute of repose,Allbee v. Crane Co., 644 A.2d 308, 308 (R.I. 1994), a creature of legislation that generally "bar[s] any suit that is brought after a specified time since the defendant acted . . ., even if this period ends before the plaintiff has suffered a resulting injury."Black's Law Dictionary (8th ed. 2004); see also ThetaProperties v. Ronci Realty Co., 814 A.2d 907, 913 (R.I. 2003) ("[A] statute of repose terminates any right of action after a specific time has elapsed." (quoting Salazar v. Machine Works,Inc., 665 A.2d 567, 568 (R.I. 1997))). Here, the instant § 9-1-29 statute of repose was designed by the Rhode Island General Assembly in response to "the demise of the doctrine of privity of contract." Walsh v. Gowing,494 A.2d 543, 546 (R.I. 1985). Noting that without the privity doctrine, architects, professional engineers, contractors, subcontractors, and materialmen "no longer had immunity from unlimited potential liability to third parties upon the completion and acceptance of the improvement to real property," id., the General Assembly stepped in with § 9-1-29 "to provide a reasonable limitation on the[se actors'] greatly expanded potential liability."Qualitex, Inc. v. Coventry Realty Corp.,557 A.2d 850, 853 (R.I. 1989). This limitation extinguishes liability for certain parties in the construction chain once ten years has elapsed since the completion of an improvement to real property. Sec. 9-1-29. *Page 5 
Section 9-1-29, with emphasis relevant to the instant facts, states in full:
 No action (including arbitration proceedings) in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or supervised to any extent the construction of improvements to real property or against any contractor or subcontractor who constructed such improvements to real property or materialmen who furnished materials for the construction of such improvements on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements or in the materials furnished for such improvements:
 (1) For injury to property, real or personal, arising out of any such deficiency;
 (2) For injury to the person or for wrongful death arising out of any such deficiency; or
 (3) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (1) and (2) hereof; more than ten (10) years after substantial completion of such an improvement; Provided however, that this shall not be construed to extend the time in which actions may otherwise be brought under §§ 9-1-13 and 9-1-14.
Id. (emphasis added). Essentially, once ten years has passed since the "substantial completion" of "construction of improvements to real property," the statute exonerates those under the umbrella of "constructors" ("architect or professional engineer," "contractor or subcontractor," "materialmen who furnish materials") from any tort liability arising from a "deficiency" in pre-construction ("design, planning, supervision, or observation"), a "deficiency" in actual construction, or a "deficiency" in the materials "furnished" for the construction. The instant case turns not on what constitutes a "substantial completion," "construction," "improvement," or "deficiency" — elements that remain largely uncontested by the parties — but rather on the parties that are protected by this statute. Specifically, Kentile asks this Court to find that it is within the class of statutory "materialmen" or judicially-recognized "manufacturers" that are entitled to § 9-1-29 immunity for the instant Plaintiffs' damages. See Qualitex, Inc. v. CoventryRealty, 557 A.2d 850, 853 (R.I. 1989) *Page 6 
(holding for the first time that "manufacturers, just like architects, engineers, contractors, and subcontractors, need protection [via § 9-1-29] from individuals whose negligence in maintaining an improvement to real property may cause liability").
 B The Parties' Arguments
In its Motion, Kentile asserts that § 9-1-29 immunizes it from any possible liability in this case. Kentile contends that as a manufacturer of materials used in a construction improvement to real property, it is in the class of protected "materialmen," articulated by the statute, or protected "manufacturers," recognized by our Supreme Court in Qualitex. As such, because the Plaintiffs did not file their Complaint within ten years of the substantial completion of the re-tiling improvements to GE's real property offices, Defendant claims that the statute automatically extinguishes Plaintiffs' suit against Kentile because GE used Kentile tiles in its construction of the improvement.
Conversely, Plaintiffs argue that § 9-1-29 is inapplicable and therefore, Kentile is amenable to suit. Plaintiffs do not dispute that the GE office re-tiling was an improvement to real property, nor do they dispute that they did not file their Complaint within ten years of the substantial completion of the office re-tiling. Rather, Plaintiffs contend that Kentile merely was a passive manufacturer and therefore is not within the classes protected by the constructors statute of repose. Plaintiffs maintain that § 9-1-29 immunity requires a materialmen to "furnish
materials," which necessitates participation in the "construction improvement" to a greater degree than simply placing the materials into the stream of commerce. Because Kentile did not install the tiles at the GE plant; manufacture the tiles for the specific purpose of re-tiling the GE offices; or otherwise "furnish" the tiles for the GE renovation project, Kentile, Plaintiffs maintain, is not the type of material supplier that the Legislature intended to immunize from *Page 7 
liability. Furthermore, Plaintiffs state that the Rhode Island Supreme Court precedent that proffers immunity for "manufacturers" does not stand for the proposition that manufacturers who potentially misrepresented or concealed the safety of their products are automatically protected by § 9-1-29. Accordingly, Plaintiffs argue that summary judgment is inappropriate because § 9-1-29 does not insulate Kentile from liability.
In the alternative, Plaintiffs assert that § 9-1-29 does not contemplate that a "deficiency" in the "materials furnished for such improvements" includes the addition of asbestos in floor tiles. Plaintiffs state that the asbestos was an intended component of Kentile tiles and was not negligently added during the manufacturing process. While the inclusion of asbestos may have made the tiles "defective," Plaintiffs maintain that the tiles were not "deficient" based on the common usage of the word. According to Plaintiffs' citation to Miriam Webster's Dictionary, "deficiency" requires a "lacking in some necessary quality or element" or a failure to meet a "normal standard or complement." As such, Plaintiffs argue that because the Kentile tiles contained anadded component and were not lacking anything, Kentile's product was not actually "deficient." Furthermore, Plaintiffs explain that at the time of their installation at the GE plant in Pittsfield, the "normal standard" for floor tiles incorporated an asbestos additive to make the tiles work properly and adequately. Plaintiffs contend that the purposeful inclusion of asbestos in the tiles cannot be considered "a deficiency . . . in the materials furnished for such improvements;" and therefore, the statute does not shield Kentile from liability.
Lastly, Plaintiffs present an alternative argument that even if § 9-1-29 does apply to insulate Kentile from tort liability, it does not apply to Plaintiffs' claims for breaches of the warranty of merchantability and implied fitness pursuant to the Uniform Commercial Code (UCC). Because breaches of warranty sound in contract rather than tort, Plaintiffs assert that § 9-1-29, *Page 8 
by its terms, cannot reach those claims. Id.
("No action (including arbitration proceedings) in tort to recover damages shall be brought. . . .") (emphasis added). Accordingly, Plaintiffs implore this Court to retain the breach of warranty claims even if it determines that the tort claims against Kentile must be dismissed per § 9-1-29.
 C Kentile as Judicially-Recognized Manufacturer or Statutory Material Man
For the purposes of the instant Motion, this Court will presume that asbestos-containing tiles are "deficient" per § 9-1-29. As such, the threshold issue in this Motion is whether Kentile is statutorily protected as the manufacturer of tiles used in the improvements to GE's real property. It is undisputed that Kentile did not play an affirmative role in the selection, fashioning, or installation of tiles in the GE office buildings. Kentile simply was the brand of tiles that GE or their agents chose for their new flooring at the Pittsfield plant. Defendant claims that this passive contribution to the improvements at the office buildings is enough to constitute its status as a "materialmen who furnished materials for the construction of the improvement" or as a judicially-recognized "manufacturer" thereby affording it the protections of § 9-1-29. This Court disagrees.
Our Supreme Court has had the occasion to analyze which parties are granted immunity by § 9-1-29 in Qualitex, Inc. v. CoventryRealty, 557 A.2d 850 (R.I. 1989); Desnoyers v. Rhode IslandElevator Co., 571 A.2d 568 (R.I. 1990); and Allbee v. CraneCo., 644 A.2d 308 (R.I. 1994). This Court examines each precedent in turn.
In Qualitex, our high court evaluated whether the statute of repose insulated a manufacturer of a fire-protection system from liability. 557 A.2d at 852-53. The Qualitex Court first noted that the express words of the statute did not include "manufacturers," but given the Legislature's intent for a broad application of § 9-1-29, "manufacturers, just like architects, *Page 9 
engineers, contractors, and subcontractors, need protection from individuals whose negligence in maintaining an improvement to real property may cause liability." Id. at 853 (citing J.H.Westerman Co. v. Fireman's Fund Ins. Co.,499 A.2d 116, 121 (D.C. App. 1985)). However, our Supreme Court did not decide Qualitex on the basis of that defendant's status as a manufacturer alone. Instead, the Court went on to hold that the defendant in that case was also a "material man" per the statute and was entitled to immunity per § 9-1-29 because it had "designed, manufactured, sold, and installed the sprinkler unit."Id. at 851 (emphasis added). The Court defined "material man" as one who "`furnishes materials or supplies used in construction or repair of a building [or] structure.'" Id. at 853 (quotingBlack's Law Dictionary 881 (West 5th ed. 1979)). By delineating between materialmen and manufacturers, the Court clearly articulated that the two entities were not equivalent, but intended that § 9-1-29 offered protection for both classes. However, inQualitex, the defendant represented both classes combined.Id. ("[W]e hold that [the defendant], as a material manor manufacturer, is entitled to the protection of this statute of repose.") (emphasis added). Nonetheless, this Court emphasizes that unlike Kentile and the tiles in the instant case, the manufacturer in Qualitex very clearly had participated in the installation of the deficient fire-sprinkler system. On its facts,Qualitex was not a case about a passive manufacturer alone who simply put its products into the stream of commerce.
Similar to the outcome in Qualitex, our Supreme Court inDesnoyers found that the § 9-1-29 statute of repose applied to a manufacturer who took an active role in the construction of the improvement that ultimately caused the plaintiff's injury. Though focusing on whether an elevator was an "improvement," theDesnoyers Court nonetheless held that the "installation of the freight elevator" by the defendant-elevator-manufacturer afforded the defendant immunity *Page 10 
per § 9-1-29. 571 A.2d at 568, 570 (emphasis added). Again, unlike Kentile and the tiles in the instant case, the manufacturer inDesnoyers did more than put the deficient freight elevator into the stream of commerce. Rather, the defendant-manufacturer actually participated in its installation.
Most recently in Allbee, a one-page order issued by the Supreme Court of Rhode Island, the manufacturer of a vertical turbine pump was entitled to immunity by § 9-1-29 even though another defendant had installed the pump. 644 A.2d at 308. With a single citation to Qualitex, the Allbee Court held that the passive, pump manufacturer could benefit from the immunity protections of § 9-1-29. Id. ("This [Qualitex] court concluded that § 9-1-29 included manufacturers."). However, our Supreme Court in Qualitex went beyond that simple statement on the issue of manufacturer immunity stating that "[m]anufacturers, just like architects, engineers, contractors, and subcontractors, needprotection from individuals whose negligence inmaintaining an improvement to real property may causeliability." 557 A.2d at 853 (emphasis added). It justified granting immunity to manufacturers pursuant to the Legislature's intention to avoid unlimited liability for constructors. By articulating the need to protect constructors "from individualswhose negligence in maintaining an improvement . . . may cause liability," the Qualitex Court determined that manufacturers deserve protection via § 9-1-29 because disrepair, neglect, and misuse of their product by third parties many years after its inclusion in a construction improvement can be a superceding cause for damages and injury. The Legislature, the Qualitex Court found, wanted to insulate manufacturers from such liability to the same degree as architects, engineers, contractors, and subcontractors, who would complete a construction to the specifications and approval of their clients, but who could still become liable many years down the line given the abolition of privity and their inability to control the *Page 11 
improvement. See id. at 852; Walsh,494 A.2d at 546 ("With the extinction of the doctrine, architects and engineers (among others) no longer had immunity from unlimited potential liability to third parties, upon the completion and acceptance of the improvement to real property."). Thus,Qualitex's justification for manufacturer immunity resonates in the Allbee case, wherein the vertical turbine pump's falling parts caused the plaintiff's injury and certainly could have been a result of "negligence in maintaining [the pump] improvement."
Qualitex's justification for granting manufacturers § 9-1-29 immunity, however, is totally inapposite to the instant case where potential negligence by a third party has no bearing on damage that befell Mr. Sharp. The inclusion of asbestos in the tiles had nothing to do with third party superceding causes that Kentile, as the manufacturer, lacked an ability to control. The asbestos in the tiles and its hazardous potential were present from the moment the tiles were manufactured and installed. In fact, Kentile had complete control over the addition of asbestos and should not be permitted to now use § 9-1-29 as a shield for liability. See Dighton v. Federal Pacific Elec. Co.,506 N.E.2d 509, 515 (Mass. 1987) (explaining that one reason Massachusetts's statute of repose was enacted was that constructors lack the ability to institute quality control procedures whichare available to manufacturers); see also Wolfe v. Dal-TileCorp., 876 F. Supp. 116, 120 (S.D. Miss. 1995) ("[T]he rationale is clear for having such a time limit for persons who relinquish control over the property and have no ability or opportunity toremedy any wrongs which exist. . . .") (emphasis added). Seegenerally Jay M. Zitter, Validity and construction of statuteterminating right of action for product — caused injury at fixedperiod after manufacture, sale, or delivery of product, 30 A.L.R. 5th 1 (2001). Therefore, though Allbee cursorily cited Qualitex to hold that all manufacturers are entitled to9-1-29 immunity, Qualitex's premise does not supportAllbee's blanket statement or the application of immunity here. *Page 12 
Because Kentile is not a "material man" who was directly involved in the installation of the tiles, nor was Kentile a judicially-recognized "manufacturer" deserving of protection because there could have been some third party negligence related to the later maintenance of the tiles, this Court finds that Kentile falls outside the gambit of § 9-1-29 immunity as articulated by our Legislature and our Supreme Court. "To interpret otherwise essentially would eviscerate § 9-1-29 because it would serve to protect every manufacturer and/or supplier whose products may have been used in construction or improvement projects, regardless of how far removed such manufacturer was from the process, and irrespective of how peripheral its products may have been to those projects."Quackenbos v. American Optical Corp., No. PC-2004-6504, 2008 WL 914390 (R.I. Super. Ct. Jan. 17, 2008). As such, this Court finds that Kentile is not immunized from potential liability via § 9-1-29.
In closing, this Court pauses to recognize Defendant's reference to Pinkham v. Collyer Insulated Wire Co., No. 92-0426B,1994 WL 385375 (D.R.I. 1994), an unpublished decision issued by the District Court of Rhode Island. In Pinkham, the federal District Court was tasked with interpreting the § 9-1-29 statute of repose and its application to a wire manufacturer who was not involved in the installation of deficient wiring. Id. at *13-*16. The Pinkham Court held that after Qualitex, there was no requirement that a manufacturer had to install or otherwise participate in the construction of the improvement to benefit from the protections of § 9-1-29. Id. at *14. In fact, the Pinkham Court claimed that Qualitex "blanketly included manufacturers in the protective scope of § 9-1-29." Id. However, Pinkham
failed to parse Qualitex's reasoning for affording manufacturers immunity — the need to protect constructors "from individuals whose negligence in maintaining an improvement to real property may cause liability." Id. (quotingQualitex, 557 A.2d at 853) (emphasis added). Furthermore, this Court is not obligated to accept *Page 13 Pinkham's interpretation of § 9-1-29 without question and apply its precedent to the instant facts. Here, the Kentile tiles allegedly were deficient from the moment they were installed. This allegation makes the potential for a third party's later negligent maintenance of the tiles nonexistent and therefore incongruent with the reasons Qualitex granted manufacturers immunity per § 9-1-29 in the first place.
 III Conclusion
This Court finds that the § 9-1-29 statute of repose does not apply to instant Defendant. As such, Defendant is amenable to suit, and its Motion for Summary Judgment is denied. Because Defendant's status as a passive manufacturer of asbestos-containing tiles makes § 9-1-29 immunity unavailable, this Court need not reach the issues of whether either of Plaintiffs' other two arguments — that the inclusion of asbestos is not a "deficiency" pursuant to § 9-1-29 or that breach of warranty contract claims are not barred by § 9-1-29 — similarly makes the statute inapplicable to the instant facts. Counsel shall prepare and submit the appropriate judgment for entry in accordance with this Court's decision.
[1] Since the filing of this action, Mr. Sharp passed away. (Mot. Hr'g 5:23-25, July 21, 2010 Morning.) Accordingly, the Estate of Alan R. Sharp shall be substituted for Alan R. Sharp as the proper party in interest.
[2] This Court notes that when there are multiple parties in a civil action, Rule 54(b) permits this Court to render a final judgment against a single party where appropriate. Super. R. Civ. P. 54(b) (". . . [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."). Accordingly, if summary judgment in favor of Kentile is warranted pursuant to Rule 56(c), then this Court may award Kentile final judgment pursuant to Rule 54(b) without waiting for the resolution of the entire case.