Justice Robinson,
dissenting.
I respectfully dissent, but I do so rather vigorously. I readily concede' that this is a close case. That being said, after long and intense reflection, I have concluded that the trial justice who presided over the jury trial in this case “got it right” when, at the close of the evidence, she granted the defendant’s motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. I simply fail to perceive any basis in the record for concluding that a' reasonable jury could legitimately have found the defendant liable under the facts as presented at trial.
I am well aware of our jurisprudence under Rule 50, whereby the trial justice, and indeed this Court, must “examine the *1148 evidence in the light most favorable to the nonmoving party and “draw[] from the record all reasonable inferences that support the position of the nonmoving party.” Lemont v. Estate of Ventura, 157 A.3d 31, 36 (R.I. 2017) (internal quotation marks omitted). I am likewise aware that the trial justice should enter judgment as a matter of law only when “there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.” Rule 50(a)(1). However, I do not believe that this case surmounts even that rather low bar.
The courts of this jurisdiction have for many years adhered to “the Connecticut Rule” when dealing with a landlord’s duties in the context of the ongoing falling of precipitation. See Benaski v. Weinberg, 899 A.2d 499, 502-03 (R.I. 2006). The relevant aspect of that Rule has been well summarized as follows: “[A]s a general rule, any duty to clear a natural accumulation of ice and snow is not triggered before a reasonable time after the storm ends.” Berardis v. Louangxay, 969 A.2d 1288, 1292 (R.I. 2009) (citing Benaski, 899 A.2d at 503). The “Local Climatological Data” recorded by the National Oceanic and Atmospheric Association at Theodore F. Green Airport, which was admitted as an exhibit at trial, reflected the fact that it began snowing around 5:00 a.m. on December 26, 2010 and continued into December 27, resulting in a substantial snowfall.[1] Thus, as the trial justice recognized, under the “Connecticut Rule,” MAG Realty would have had an arguable duty with respect to the black ice at issue only if said ice was formed prior to the start of the snowfall at 5:00 a.m. on December 26. However, in my judgment, a thorough review of the record fails to reveal any meaningful evidence on which a reasonable juror could have reached such a conclusion.
The “Local Climatological Data” admitted at trial established the fact that there was no snowfall in the two days preceding December 26. Additionally, plaintiff himself testified that he did not “notice anything” on the parking lot when he returned home on December 25. The plaintiffs wife, Jennifer Aubin, also testified that she did not observe any ice on the parking lot when she and defendant returned home on December 25, at approximately midnight the day before her husband’s fall. Moreover, plaintiffs testimony with respect to the existence of snow piles, the melting of which, according to plaintiff, resulted in puddles in the parking lot, does not aid plaintiffs case due to the fact that he also testified that the area where he slipped was “a completely different area than [the area] where the puddling would occur.”
I note as well that Ms. Aubin’s testimony on cross-examination with respect to the snow she observed on the grassy area on December 26 was, in my judgment, insufficient to surmount even the rather forgiving criterion established by Rule 50. She testified that, when she left the Au-bins’ apartment and went outside, she “d[id]n’t remember seeing grass when [she] walked into the yard.” When she was asked if she “saw snow,” she replied as follows: “Or something, because there would have been grass.” In addition, the following was her testimony:
“[DEFENSE COUNSEL]: * * * Do you remember there being any piles of snow along * * * the area you can see the grass abuts the pavement?
*1149 “[MS. AUBIN]: There were probably snow drifts there.
“[DEFENSE COUNSEL]: Okay. There were snow drifts there to your recollection?
“[MS. AUBIN]: Yes.
“[DEFENSE COUNSEL]: Okay. Do you remember how high they were?
“[MS. AUBIN]: At that time, no.
(( sfs ⅜ #
“[DEFENSE COUNSEL]: * * * Do you remember how long those snow drifts had been there?
“[MS. AUBIN]: No, I do not.
“[DEFENSE COUNSEL]: Do you remember when the last storm would have been so that there would have been the snow drifts there?
“[MS. AUBIN]: No.”
Significantly, Ms. Aubin also testified on cross-examination that she did not go outside and observe the parking area immediately after her husband “indicated” to her that he had fallen. However, she stated that she did go outside and observe the parking lot at some later point on December 26, although she was unable at trial to recall just when that was. When she was later asked during cross-examination if she observed the parking lot on “the afternoon of the 26th,” she replied: “Possibly.” It is far from clear from Ms. Aubin’s testimony at what time of day she observed snowdrifts; and she similarly could not remember the size of the snowdrifts or how long they had been there. Accordingly, it is entirely conceivable that Ms. Aubin could have observed very small snowdrifts late in the morning, in the afternoon, or in the evening of December 26, which could have been the result of the snowfall on December 26. Additionally, it is my opinion that the utterly vague statement about the existence of ice in the parking lot, which Ms. Aubin testified was relayed to the landlord on at least two previous occasions, is simply inadequate to have met plaintiffs burden. Ms. Aubin’s testimony does not even state when such a communication was made to the landlord—whether it was a few days earlier, earlier in the month, earlier in the year, or even in some previous year.[2]
The evidence in this case would require a jury to speculate about exactly how the weather conditions in the days preceding December 26 could have resulted in the melting and refreezing necessary to have created the black ice at issue before the morning of December 26, on which plaintiff would later slip. See Scittarelli v. Providence Gas Co., 415 A.2d 1040, 1044 (R.I. 1980) (holding that “[t]he defendant’s negligence remain[ed] a matter of speculation and conjecture” because the plaintiff failed to meet her burden of introducing evidence *1150 of negligence- and, consequently, that the trial justice should have entered a directed verdict in the defendant’s favor); see also Montuori v. Narragansett Electric Co., 418 A.2d 5, 10-11 (R.I. 1980) (holding that the “plaintiff was unable to produce more than minimal direct evidence to establish the element of causation” and that, therefore, the trial justice should have granted the defendant’s motion for a directed verdict). As the trial justice in this case perceptively stated: “[T]he jury would have to make assumptions concerning the rate at which snow, ice, and water might melt, freeze; or evaporate during the various weather conditions shown in the meteorological data charts.” For that reason, the lack of expert testimony in support of the plaintiffs case is striking. The trial justice was correct in stating that the jury would be asked to “make findings that are beyond their expertise as lay persons.” I fail to see how any reasonable juror could find in the plaintiffs favor based on the evidence presented at trial without engaging in impermissible conjecture and speculation.
Accordingly, I record my respectful but vigorous dissent.

. We note that plaintiffs testimony reflects the fact that his fall occurred at approximately 10:00 a.m. on December 26, 2010.

. The majority cites Dawson v. Rhode Island Auditorium, Inc., 104 R.I. 116, 242 A.2d 407 (1968), stating that that case held that a "defendant building owner, even though it had never been given notice of the specific leak that caused the plaintiff’s injuries, had notice of the leak in its roof because the defendant previously had notice that its roof was generally leaky during heavy rains.” While I do not quibble with the majority's statement, a reading of Dawson leads to the ineluctable conclusion that the facts which established that the defendant building owner in Dawson was on notice of the leaky roof are distinguishable from the vague comments on which the majority relies in the case before us. In Dawson, the defendant building owner had been aware of the leaks in the building’s roof for years prior to the incident at issue in the case. Id. at 126-27, 242 A.2d at 413-14. Indeed, at one point the roof had "approximately 387 leaks.” Id. at 126, 242 A.2d at 414. Moreover, the defendant building owner had taken measures over the preceding years to attempt to "resur-fac[e]” the "chronic leaking condition of [the] roof.” Id. at 127, 242 A.2d at 414. Accordingly, the factual situation in Dawson is, in my judgment, easily distinguishable from the instant case.